20 P.3d 599

TOWN OF TORTOLITA, a municipal corporation, Lan Lester, as Mayor of the Town of Tortolita and individually, Carlotta ("Scottie") Bidegain, Steven Shochat, and Kathleen Franzi, individually as residents and electors of the Town of Tortolita, Plaintiffs–Appellants,

v.

Janet A. NAPOLITANO, in her official capacity as the Attorney General of the State of Arizona, Defendant–Appellee.

State of Arizona, ex rel. Janet A. Napolitano, Attorney General of the State of Arizona, Plaintiff,

v.

The Town of Tortolita, a municipal corporation, Lan Lester, as Mayor of the Town of Tortolita and individually, Carlotta ("Scottie") Bidegain, Steven Shochat, and Kathleen Franzi, individually as residents and electors of the Town of Tortolita, Defendants.

No. 1–CA–CV 00–0437.

Court of Appeals of Arizona, Division 1, Department B.

March 29, 2001.

Risner & Graham by William J. Risner, Tucson, Attorneys for Appellant.

Janet A. Napolitano, Attorney General by Theresa M. Craig, Assistant Attorney General, Phoenix, Attorneys for Appellees.

## OPINION

EHRLICH, Judge.

¶ 1 In a proceeding regarding the validity of the incorporation of the Town of Tortolita, the superior court entered a preliminary injunction prohibiting Tortolita and its officials from exercising governmental authority such as the assumption of obligations on behalf of Tortolita, including debt for attorneys' fees. Nearly two years later, Tortolita requested modification of the preliminary injunction, seeking to dissolve the portion preventing it from incurring debt for attorneys' fees. The court refused to grant a modification, and Tortolita appealed. For the reasons given below, we affirm the court's order.

*FACTS AND PROCEDURAL HISTORY*

¶ 2 The history of this litigation is detailed in our opinion in *City of Tucson v. Pima County,* 199 Ariz. 509, 19 P.3d 650 (App. 2001). In summary, Arizona Revised Statutes ("A.R.S.") section 9–101 (Supp.2000) provides that an area may be incorporated as a city or town if two-thirds of the area's eligible electorate so petition the county's board of supervisors. This procedure was modified with the passage of A.R.S. section 9–101.01 (1996) to require the consent of established cities and towns within six miles of the area proposed to be incorporated. In 1997, the legislature enacted Laws 1997, Chapter 204, Section 2 ("1997 Law"), the purpose of which was to suspend the requirement of consent in Pima County between July 21, 1997, and July 15, 1999. In reliance on these three statutes and a superior-court judgment declaring the statutes constitutional, and in response to the requisite number of lawful petitioners, the Pima County Board of Supervisors, without the consent of the City of Tucson, declared Tortolita to be incorporated on September 2, 1997.

¶ 3 The next month, the State of Arizona, through its attorney general, filed a *quo war-*

*ranto* action in Pima County Superior Court, Cause No. C–322969, challenging the validity of the incorporation of Tortolita on the basis that the statutory requirements had not been met. It requested a preliminary injunction to prevent Tortolita and its officials from exercising any governmental authority. Three days earlier, Tortolita had filed a complaint against the Arizona Attorney General in the same court, Cause No. C–322883, to forestall any *quo warranto* proceeding that might be filed from being allowed to proceed. The cases were only partially consolidated, but the rulings made by the court relevant to this appeal apply to both cases, which, for convenience, we will refer to as the *quo warranto* proceeding.

¶ 4 As suggested above, in other litigation, the superior court had declared constitutional the process whereby Tortolita was deemed incorporated. However, we reversed that judgment in an opinion issued November 12, 1997, *City of Tucson v. Woods,* 191 Ariz. 523, 532, 959 P.2d 394, 403 (App.1997), holding that the 1997 Law was an unconstitutional special and local law. In conclusion, we said of Tortolita that "[n]o incorporation which has occurred pursuant to the statute is valid."

¶ 5 A hearing on the request for a preliminary injunction in the *quo warranto* proceeding was held on December 8, 1997. The next day, the superior court enjoined Tortolita and its officials from taking any action as a governmental entity, including incurring liabilities and obligations on behalf of Tortolita. Relying on the opinion in *Woods,* the court found it probable that the State would prevail on the merits in the *quo warranto* proceeding. In addition, it addressed the three other traditional criteria for establishing entitlement to a preliminary injunction—the possibility of irreparable injury to the State for which there was no other adequate remedy, a balance of hardships toward the State and public policy-and decided that equity favored the State.

¶ 6 Tortolita moved for a clarification that the superior court's order did not prevent Tortolita from incurring debt for attorneys' fees for the representation of its interests in

this and other cases in which it was involved. In answer, the court reiterated that the preliminary injunction barred Tortolita from incurring debt for attorneys' fees. It wrote:

The Order does not abrogate the right to counsel. First, the Court cannot abrogate the rights of an entity which does not exist. And, second, the "Town" may continue to be represented by counsel with the understanding that there will be no payment to counsel unless the incorporation of the "Town," and its existence, is upheld by the appellate courts of this state. While this may be adequate cause for counsel to renegotiate his agreement with the "Town" for its representation, it does not abrogate the "Town's" right to counsel. Certainly there is no right of the "Town of Tortolita" to have the Court appoint counsel at taxpayer expense to continue on with the litigation and to engage in additional litigation as counsel may believe is appropriate.

\* \* \*

THE COURT DECLINES to revise or modify its Order of December 9, 1997, which prevented the "Town" from incurring any further liabilities which could be passed on to taxpayers. However, there is no restriction on the receipt or expenditures of donations or "loans" as long as there is no pledge or promise of repayment by the "Town of Tortolita."

¶ 7 Tortolita filed no appeal, but, after the preliminary injunction had been in effect for almost 21 months, Tortolita filed a motion pursuant to Arizona Rule of Civil Procedure ("Rule") 65(c) to modify the preliminary injunction by dissolving the restraint on Tortolita's acquisition of debt for attorneys' fees. Tortolita argued that, because this court in *Woods* had not foreclosed continued litigation to address alleged violations of federal constitutional rights, it was unjust to continue to restrain Tortolita from incurring debt for attorneys' fees because it yet might be able to prevail on the merits in the *quo warranto* suit by proving that it had been lawfully incorporated.[1]

¶ 8 The superior court declined to modify the injunction to allow Tortolita to incur debt for attorneys' fees. It found no reason to change its prediction that the State was likely to succeed on the merits, observing that "any possible existence of the town hinges upon a finding that A.R.S. 9–101.01 is unconstitutional" and that, "[s]ince the presumption is that this statute *is* constitutional, Tortolita's task, while not insurmountable, is clearly uphill." (emphasis original). It added:

This Court still cannot assume that the electors and the property owners are the same group, and, therefore, the request to modify the injunction previously entered on December 9, 1997, is denied.

The Court is not unsympathetic to counsel's need to be paid for his services; and the court's injunction doesn't prohibit payment to counsel, although it prohibits the town from indebting itself for attorney's fees. As the documents point out, 72 percent of the electorate from the area of Tortolita wish to be an incorporated town. The Court knows of no prohibition to soliciting funds from those petitioners to help ensure their wishes are carried out. It is not inappropriate for counsel to point out that: "There ain't no such thing as a free lunch;" nor is it inappropriate for counsel to terminate his services as an unpaid volunteer.

¶ 9 Tortolita appealed from the trial court's denial of its request for modification of the preliminary injunction. We have jurisdiction to review this order. (A.R.S. § 12–2101(F)(2) (1994)).

### DISCUSSION

¶ 10 The issuance of a preliminary injunction is within the discretion of the superior court, and its decision will not be reversed absent an abuse of that discretion. *Valley Medical Specialists v. Farber*, 194 Ariz. 363, 366, ¶ 9, 982 P.2d 1277, 1280 (1999). Similarly, discretion in ruling on a request to modify or dissolve an injunction lies with that

---

1. Tortolita pointed out that the Town of the Villas of Casas Adobes, a neighboring area that, like Tortolita, was litigating its incorporation, had not been precluded by the superior court from incurring debt to pay its attorneys. Tortolita complained that this discrepancy was unfair.

court. *Nu–Tred Tire Co., Inc. v. Dunlop Tire & Rubber Corp.*, 118 Ariz. 417, 420, 577 P.2d 268, 271 (App.1978).

¶ 11 Tortolita chose not to appeal the superior court's exercise of discretion in originally granting the preliminary injunction, including the prohibition on incurring debt for attorneys' fees. Instead, it later sought modification of the injunction pursuant to Rule 65(c), which provides, in relevant part, that, "[i]f upon hearing the motion [to dissolve or modify], it appears that there is [sic] not sufficient grounds for the injunction, it shall be dissolved, or if it appears that the injunction is too broad, it shall be modified."

¶ 12 In the *Nu–Tred* case, we examined the question whether a motion to dissolve a preliminary injunction permits a reexamination of the legal and factual basis of the preliminary injunction or whether the motion is limited to new legal or factual issues that would affect its continuing propriety. 118 Ariz. 417, 577 P.2d 268. We rejected the proposition that Rule 65(c) provides a party with a means of attacking the original basis for the injunction at any time after its entry on any basis that was available when the request for injunctive relief was first heard. Instead, we concluded, it "serves the much more limited purpose of providing a means to show that changed circumstances [including matters which could not reasonably have been raised at the hearing,] or changes in the law require the modification or setting aside of the injunction." *Id.* at 420, 577 P.2d at 271.

■ ¶ 13 Tortolita argued to the superior court that there were changed circumstances that made it inequitable to keep in place the portion of the preliminary injunction dealing with debt for attorneys' fees, relying on the appellate decisions allowing Tortolita to present federal constitutional challenges. The court was not convinced, however. Rather, it still believed it so likely that the State would

prevail on the merits that it found no reason to change its original decision.

¶ 14 We find no abuse of discretion in the superior court's determination that Tortolita's showing of "changed circumstances" did not undercut the court's original assessment of the State's probability of prevailing on the merits sufficiently to warrant modification of the preliminary injunction. Indeed, as stated above, the superior court proved to be correct when, in *City of Tucson*, we affirmed the judgment of another division of the Pima County Superior Court that the statute is constitutional and that the incorporation of Tortolita is void.[2]

¶ 15 On appeal, Tortolita maintains that the superior court erred in refusing to modify the preliminary injunction and allow Tortolita to obligate itself to pay an attorney. Tortolita claims that due process allows it to pay an attorney even if its incorporation is— as it was—found to be invalid. We reject this argument.

■ ¶ 16 First, as we said in the *Nu–Tred* case, this argument is not within the scope of a motion to modify a preliminary injunction. It does not stem from new legal or factual issues affecting the continuing propriety of the preliminary injunction but requires a reexamination of the bases of the original ruling.

■ ¶ 17 Second, even were we willing to consider an argument that a clearly erroneous original ruling should be a basis for modifying an injunction, *see Pacific Rivers Council v. Thomas*, 936 F.Supp. 738, 742 (D.Idaho 1996), citing *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F.Supp. 1165, 1178 (D.Mass.1989), we would conclude that Tortolita had failed to establish that there was any clearly erroneous ruling such as to deny it due process because it was prohibited from incurring debt for attorneys' fees. Most significantly, the Fourteenth Amendment applies to persons, not municipalities, and, therefore, a mu-

2. Tortolita complains that it was improper for the superior court to predict the merits of its case utilizing the merits of another case pending before another division. It was Tortolita, though, which successfully requested a stay of the *quo warranto* proceedings because the rul-

ings in other cases might be dispositive of this action. Additionally, the likelihood of the party's ultimate success on the merits is a factor in establishing an entitlement to a preliminary injunction.

nicipality has no Fourteenth Amendment right to assert. *See Williams v. Mayor of Baltimore*, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933) (Equal Protection Clause); *City of Newark v. New Jersey*, 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943 (1923) (same); *City of Trenton v. New Jersey*, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923) (Contracts and Due Process Clauses); *City of Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 233–34 (9th Cir.) (Fourteenth Amendment), *cert. denied*, 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502 (1980); *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir.) (various constitutional claims), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973); *Northwestern School Dist. v. Pittenger*, 397 F.Supp. 975, 979 (W.D.Pa.1975) (due process).

¶ 18 Further, A.R.S. section 9–102 (Supp.2000) governs the disincorporation of cities and towns, and it provides that, when the incorporation of a city or town is "declared null and void by a court," a trustee is appointed to close the affairs of the corporation.[3] Therefore, any obligations incurred by Tortolita, given that its incorporation has been declared null and void, will be handled in this manner.[4] There is no suggestion by Tortolita that this statute is unconstitutional.

¶ 19 Tortolita's final complaint is that it was denied due process because, without being allowed to assure its counsel that he will be paid from taxpayer revenues, it will not receive adequate representation in all of the lawsuits in which it has participated to maintain its existence.[5] Again, Tortolita as an entity may have a remedy pursuant to A.R.S. section 9–102, but that issue is not before us. Additionally, the superior court prohibited only Tortolita as an entity from incurring a debt or obligation to pay its fees. Thus, even were we to assume that Tortolita possessed a Fourteenth Amendment right to due process and that it should not have been left without a means of defending itself in proceedings questioning the validity of its incorporation, that would be true only if the situation were such that Tortolita could not obtain funding from any other source and could not otherwise obtain an attorney to represent its interests. Evidently, though, the court was satisfied that Tortolita would continue to be adequately represented and, in fact, Tortolita's attorney has continued to provide representation for it in thirteen separate lawsuits. Certainly, Tortolita took no action for nearly two years to obtain any relief from the restraint on its acquisition of debt for attorneys' fees.

### CONCLUSION

¶ 20 We are persuaded that no violation of Tortolita's alleged due process rights has occurred. The order is affirmed.

CONCURRING: JAMES B. SULT, Judge, CECIL B. PATTERSON, Jr., Judge.

---

3. "If the incorporation of a city or town is rescinded or declared null and void by a court of competent jurisdiction for any reason, the superior court in the county in which that city or town is situated may appoint a trustee with authority to wind up the affairs of the corporation, sell and convey its property, real and personal, and pay the debts of the city or town."

4. Tortolita alleges that it is unfair to prevent it from incurring debt for attorneys' fees while, apparently, no injunction prohibits Casas Adobes from incurring debt for its attorneys' fees. First, the Casas Adobes case is not before us, and there is insufficient information about that case in this record to allow us to compare the two. Second, we are unclear as to the relevance of the exercise of a superior court's discretion to reach a different result in a case not before us with regard to a modification of the injunction imposed in this case.

5. Of the cases Tortolita cites, the case most helpful to its argument is *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554 (5th Cir. 1987), in which officers of a savings and loan association were alleged to have received improper compensation and had been enjoined from dissipating their personal assets. They then sought to use the association's assets to defend themselves from accusations in actions accusing them of ruining the institution. However, the officers were individual persons entitled to the protection of the Sixth and Fourteenth Amendments, and, even so, the court concluded that none of the assets were required to be released to the officers for their defense unless they could meet the burden of showing that they could secure the services of an attorney only if assets subject to the freeze order were released.