IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE BAR OF ARIZONA, *Plaintiff/Appellee*,

*v.*

RANDY D. LANG, *Defendant/Appellant*.

No. 1 CA-CV 12-0629
FILED 4-29-2014

Appeal from the Superior Court in Maricopa County
No. CV2009-012054
The Honorable Mark H. Brain, Judge

**AFFIRMED**

COUNSEL

State Bar of Arizona, Phoenix
By Edward W. Parker
*Counsel for Plaintiff/Appellee*

Arthur P. Allsworth, Attorney at Law, Phoenix
By Arthur P. Allsworth
*Counsel for Defendant/Appellant*

_____

**OPINION**

Presiding Judge Peter B. Swann delivered the opinion of the Court, in which Judge Patricia K. Norris and Chief Judge Diane M. Johnsen joined.

_____

**S W A N N**, Judge:

¶1        Randy D. Lang, a nonmember of the State Bar of Arizona, was enjoined from practicing law in Arizona based on evidence that he repeatedly engaged in the unauthorized practice of law.  We hold that a person who presents himself as an attorney based in an Arizona office engages in the unauthorized practice of law unless he has been admitted to practice before the Arizona Supreme Court, even if he has been admitted to practice in a tribal court within the boundaries of Arizona.  The supreme court rules that compel this conclusion violate neither the First Amendment nor principles of tribal sovereignty.  We further conclude that the superior court properly granted the State Bar of Arizona's motion for summary judgment, and that the injunction is reasonable in its scope.  We therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Lang holds a law degree and is admitted to practice law in the San Carlos Apache Tribal Court.  He has never been admitted to the practice of law by the Arizona Supreme Court, and he is not a certified legal document preparer under section 7-208 of the Arizona Code of Judicial Administration.

¶3        From 2007 to 2009, the Bar, which is tasked under Ariz. R. Sup. Ct. 32(a) with regulating and disciplining persons engaged in the practice of law in Arizona, received a series of reports that Lang had engaged in the unauthorized practice of law.  Upon receiving each report, the Bar notified Lang and demanded that he cease any activity defined as the practice of law in Arizona.  When Lang did not comply with these demands, the Bar commenced an action against him in the superior court.  In its amended complaint, the Bar alleged five counts of unauthorized practice of law and argued that an injunction was necessary to prevent Lang from continuing his unlawful conduct.  Lang answered and asserted a counterclaim that was later dismissed for failure to prosecute.

¶4  In September 2011, the Bar moved for summary judgment on three counts of its complaint and notified the court that it wished to voluntarily withdraw the remaining two. Lang objected to the Bar's motion and filed a motion to dismiss Counts 1, 4, and 5 for lack of subject matter jurisdiction. He also objected to the Bar's request to withdraw Counts 2 and 3, arguing that the request did not state adequate legal reason for dismissal under Ariz. R. Civ. P. 41(a). Lang then filed a cross-motion for summary judgment in which he sought dismissal of Counts 2 and 3 with prejudice. The Bar agreed to dismissal of Counts 2 and 3 with prejudice, and the court entered an order to that effect. With respect to the remaining counts, the undisputed evidence showed the following.

I.  COUNT 1

¶5  In September 2006, Lang entered an "Attorney-Client Agreement" with T.M., a former professional boxer. The agreement was printed on letterhead that showed Lang's name, the name "Integrated Legal Services & Associates," an Arizona address not located on the San Carlos Apache reservation, and Arizona fax and phone numbers, including an "Office" number. The agreement provided that "Attorney Lang agrees to provide attorney services to Boxer [T.M.] as his personal attorney and counselary on a worldwide basis on all matters concerning Boxer [T.M.]" and that "Boxer [T.M.] acknowledges and understands that Attorney Lang is engaged in international business and law and is a licensed practicing attorney in various international for[u]ms, that Attorney Lang is not licensed with any state Bar of the United States, and that Attorney Lang practices in limited federal jurisdictions and may appear in any state court proceedings with permission from the court." Lang signed the contract as "Attorney."

¶6  According to Lang, he then acted "as scrivener" for contracts that T.M. entered with an athletic trainer and a Nevada-based promotional company. In an e-mail to the promotional company, Lang identified himself as T.M.'s "personal attorney," stated that he had "reviewed the Agreement with Mr. [T.M.] line by line," and requested changes to the contract. Lang signed both the promotional contract and the training contract as T.M.'s "attorney," the promotional contract identified Lang's Arizona address, and the training contract repeatedly referred to Lang as "Attorney Lang" and provided that Lang would represent T.M. in any disputes.

¶7  Lang also e-mailed and mailed a Nevada assistant attorney general on T.M.'s behalf. In the e-mail, Lang identified himself as T.M.'s

"attorney" and "Personal Attorney," stated legal arguments and opinions concerning a report that showed Nevada's denial of T.M.'s boxing license, and demanded that the report be amended. In the mailed letter, Lang again demanded that the license report be amended, threatened legal action, and signed as T.M.'s "Personal Attorney." The letter was printed on "I.L.S. & Associates" letterhead that identified Lang as "Attorney" and gave an Arizona address, phone number, and fax number. Using similar letterhead, Lang again identified himself as T.M.'s "personal attorney" in a letter that he wrote to the Missouri parole board regarding T.M.'s incarcerated brother.

## II. COUNT 4

**¶8** In March 2008, Lang met with S.J. in Arizona and agreed to represent S.J., a Washington resident, in a federal employment law matter. In connection with that representation, Lang drafted a notice of appeal in which he identified himself as S.J.'s "Attorney," "Personal Attorney," and "counsel," and indicated that he worked for I.L.S. & Associates in Arizona. I.L.S. & Associates charged S.J. an initial consultation fee and a flat-fee retainer for "Legal Service."

**¶9** Lang also wrote a settlement letter on S.J.'s behalf in connection with a dispute arising from a Washington real estate transaction. The letter was addressed to a Washington attorney and was printed on "I.L.S. & Associates" letterhead that identified Lang as "Attorney" and gave Arizona contact information, including an "Ofc." phone number.

## III. COUNT 5

**¶10** In July 2008, Lang entered an "Attorney-Client Fee Agreement" with J.C., a California resident, by which "DPL, Inc." agreed to provide "legal services." The agreement was prepared by Lang's assistant, who had also helped him to form an Arizona corporation named "Debt Protection, Inc." The agreement was printed on "Debt Protection Legal, Inc." letterhead that showed an Arizona address not on the reservation, toll-free office phone and fax numbers, and an Arizona mobile number for the "Managing Attorney," who was identified in the signature block as Lang.

**¶11** In representing J.C., Lang wrote a letter to a California loan consultant for the purpose of disputing debt attributed to J.C. The letter was printed on "Debt Protection Law, P.C." letterhead that showed a California address, toll-free office phone and fax numbers, and an Arizona

phone and fax number for "Senior Managing Attorney" Lang. Lang stated in the letter that his "law firm" represented J.C., and he signed the letter "For the Firm."

¶12       After considering the evidence and holding oral argument, the superior court denied Lang's motion to dismiss Counts 1, 4, and 5 and granted summary judgment for the Bar on all three counts. The court ordered restitution to S.J. and J.C. and entered a permanent injunction restraining Lang from performing acts constituting the practice of law in Arizona. Lang timely appeals.

## APPELLATE JURISDICTION

¶13       As an initial matter, Lang asserts that we may not have jurisdiction over this appeal because the order dismissing Counts 2 and 3 was not signed and, over his objection, the signed judgment did not mention the dismissal or include Ariz. R. Civ. P. 54(b) language. Lang's assertion has no merit. The order of dismissal preceded the judgment, and the judgment resolved all claims remaining in the case. Rule 54(b) therefore does not apply. The judgment is a final appealable order that allows appellate review of "any intermediate orders involving the merits of the action and necessarily affecting the judgment, and all orders and rulings assigned as error." A.R.S. §§ 12-2102(A); *see* 12-120.22(A). We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶14       Lang contends that the superior court lacked subject matter jurisdiction to consider his conduct, that summary judgment was not warranted based on the undisputed evidence, and that the injunction is overbroad. We review challenges to subject matter jurisdiction and questions involving the application and interpretation of court rules de novo. *Duckstein v. Wolf*, 230 Ariz. 227, 231, ¶ 8, 282 P.3d 428, 432 (App. 2012). We also review the grant of summary judgment de novo, viewing the evidence and all reasonable inferences in the light most favorable to Lang. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). We review the scope of an injunction for abuse of discretion. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 187, ¶ 51, 181 P.3d 219, 234 (App. 2008).

I.  THE SUPERIOR COURT HAD JURISDICTION OVER THE BAR'S AMENDED COMPLAINT.

¶15    The Arizona Constitution gives our supreme court exclusive authority to regulate the practice of law in Arizona. *In re Creasy*, 198 Ariz. 539, 541, ¶ 6, 12 P.3d 214, 216 (2000). The supreme court has disciplinary jurisdiction over individuals who are not members of the Arizona Bar but are licensed to practice law in a different state or possession of the United States and have engaged in the unauthorized practice of law in Arizona. Ariz. R. Sup. Ct. 31(a), 46(b), 46(f)(18), 75(a); Ariz. R. Sup. Ct. 42, E.R. 5.5(g), 8.5(a). The Bar is authorized to investigate, prosecute, and obtain enforceable judgments in the superior court against such individuals. Ariz. R. Sup. Ct. 75-80.

¶16    Lang contends that the superior court lacked subject matter jurisdiction because he performed the acts at issue on behalf of clients outside of Arizona or directed to third parties outside of Arizona. He also contends that subject matter jurisdiction was lacking because his representation of J.C. occurred during a period when Lang was living and working in California on a temporary basis while periodically returning to his family in Arizona. In short, Lang contends that he did not engage in the practice of law "in Arizona." We disagree. When a resident of Arizona performs legal services while holding himself out to be an Arizona attorney working from an Arizona office, he engages in the practice of law in Arizona. *See infra* ¶ 20. That residents of other states were affected by Lang's representations and that other states also may have jurisdiction over his conduct does not deprive Arizona of jurisdiction. *Cf.* Ariz. R. Sup. Ct. 42, E.R. 8.5(a) ("A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.").

II.  THE SUPERIOR COURT DID NOT ERR BY ENTERING SUMMARY JUDGMENT FOR THE BAR.

¶17    Lang next contends that summary judgment for the Bar was inappropriate because genuine issues of material fact existed and because federal law allows nonlawyers to engage in at least some of the activities

he undertook for T.M. and S.J. We find no error in the superior court's ruling.

¶18            Under Ariz. R. Sup. Ct. 31(a)(2)(B), the "unauthorized practice of law" includes engaging in the practice of law without authorization to do so *or* "using the designations 'lawyer,' 'attorney at law,' 'counselor at law,' 'law,' 'law office,' 'J.D.,' 'Esq.,' or other equivalent words [when] . . . not authorized to practice law in this state . . . the use of which is reasonably likely to induce others to believe that the person . . . is authorized to engage in the practice of law in this state." Ariz. R. Sup. Ct. 31(b) further provides that "no person shall practice law in this state or represent in any way that he or she may practice law in this state unless the person is an active member of the state bar," and Ariz. R. Sup. Ct. 42, E.R. 5.5(b), precludes lawyers who are not admitted to practice in Arizona from "establish[ing] an office or other systematic and continuous presence in this jurisdiction for the practice of law" or "hold[ing] out to the public or otherwise represent[ing] that the lawyer is admitted to practice in this jurisdiction."

¶19            Here, Lang entered a purported "Attorney-Client Agreement" with T.M. by which he agreed to provide "attorney services" as T.M.'s "personal attorney" from an office in Arizona located outside the reservation. Lang contends that the agreement was protected commercial speech under the First Amendment. But an attorney's First Amendment interest in commercial speech may yield to the state's interest in regulating the profession, *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1073 (1991), and "[t]here is 'no constitutional value in false statements of fact.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) (citation omitted). Arizona's prohibition against the unauthorized practice of law is not a broad regulation of speech, but a narrowly tailored set of rules aimed at *conduct* by persons not admitted to the Bar. Lang's speech falls into the zone of speech that the First Amendment allows the state to regulate – his speech was nothing more than an attempt to facilitate unlawful conduct, and he had no First Amendment privilege that could immunize him from the enforcement of the Arizona Supreme Court rules. *See Mont. Supreme Court Comm'n on Unauthorized Practice of Law v. O'Neil*, 147 P.3d 200, 214 (Mont. 2006).

¶20            We further disagree with Lang's contention that the representations in the engagement agreement with T.M. were not reasonably likely to induce his client to believe that he was authorized to practice law in Arizona. The purported disclaimer states that Lang "is engaged in international business and law and is a licensed practicing

7

attorney in various international for[u]ms . . . and . . . practices in limited federal jurisdictions and may appear in any state court proceedings with permission from the court." Taken as a whole, the agreement clearly implied that Lang was not a member of the Bar but was otherwise permitted to practice law in Arizona without significant restrictions. Even assuming that T.M. was not himself misled to believe that Lang was authorized to practice law because the agreement stated that Lang "is not licensed with any state Bar of the United States," the third parties to whom Lang held himself out to be an attorney officed in Arizona were not privy to the disclaimer in Lang's engagement letter. We agree with the superior court that even if we were to accept as true Lang's argument that he could have negotiated T.M.'s rights with third parties as his boxing "manager" under 15 U.S.C. §§ 6301 to 6313, the fact that he held himself out to be an Arizona attorney constituted the unauthorized practice of law.

**¶21** Likewise, even if Lang could have represented S.J. in the federal employment law matter, he committed the unauthorized practice of law by falsely representing that he was an attorney practicing in Arizona. He similarly engaged in the unauthorized practice of law by holding himself out to be an Arizona attorney when negotiating S.J.'s legal rights in the real estate dispute. Even if Lang had been lawfully working under the supervision of a licensed attorney, as he now claims, the document he authored made no mention of this alleged association and did not otherwise dispel his false representations about his own professional status.

**¶22** Lang repeated the same false representations in his dealings with J.C., agreeing under an "Attorney-Client Fee Agreement" to provide "legal services" to J.C. as a "Managing Attorney" of a law firm in Arizona and later negotiating J.C.'s legal rights while representing that he was a "Senior Managing Attorney."

**¶23** The undisputed evidence shows that in his dealings with and for T.M., S.J., and J.C., Lang repeatedly held himself out to be an attorney practicing in an Arizona office. Yet Lang was not admitted to the practice of law by the Arizona Supreme Court. His conduct therefore constituted the unauthorized practice of law under Ariz. R. Sup. Ct. 31(a)(2)(B)(2), 31(b), and 42, E.R. 5.5(b). The superior court properly entered summary judgment in the Bar's favor on Counts 1, 4, and 5.

III.    THE INJUNCTION IS NOT OVERBROAD.

¶24        Lang finally contends that the injunction entered against him is unconstitutionally overbroad.  The injunction provides:

(A)    Respondent Randy D. Lang, and any corporate entity owned, controlled or operated by Respondent, is immediately and permanently enjoined from engaging in the practice of law within the State of Arizona, defined in Rule 31(a)(2)(A), Ariz. R. S[up]. Ct. as:

(1)    preparing any document in any medium intended to affect or secure legal rights for a specific person or entity;

(2)    preparing or expressing legal opinions;

(3)    representing another in a judicial, quasi-judicial, or administrative proceeding, or other formal dispute resolution process such as arbitration and mediation;

(4)    preparing any document through any medium for filing in any court, administrative agency or tribunal for a specific person or entity; or

(5)    negotiating legal rights or responsibilities for a specific person or entity;

(B)    Respondent Randy D. Lang, and any corporate entity owned, controlled or operated by Respondent, is enjoined from engaging in the unauthorized practice of law, defined in Rule 31(a)(2)(B) as including, but not limited to using the designations "lawyer," "attorney at law," "counselor at law," "law," "law office," "J.D.," "Esq.," or other equivalent words by any person or entity who is not authorized to practice law in this state . . . , the use of which is reasonably likely to induce others to believe that the person or entity is authorized to engage in the practice of law in this state; and

(C)    Respondent Randy D. Lang, and any corporate entity owned, controlled or operated by Respondent, is enjoined from giving the appearance of maintaining a business address within the state of Arizona, except within the boundaries of a tribal jurisdiction in which Respondent is admitted to practice law; and

(D)    Respondent Randy D. Lang, and any corporate entity owned, controlled or operated by Respondent, is ordered to include on all correspondence, letterhead, business cards, and other advertising materials the words "Not admitted to practice law in the State of Arizona, except as permitted by tribal court admission to the extent consistent with Arizona law."

(E)    Respondent shall return to all customers in pending matters affected by this Judgment and Order any documents or other property to which they are entitled, including their files.

To the extent that the Respondent's conduct is authorized by Respondent's admission to practice in the San Carlos Apache Tribal Courts, and is not inconsistent with Rules 31 and 75 through 80, Ariz. R. Sup. Ct. and UPL Opinion 10-02, the foregoing injunction is inapplicable.

**¶25**    Lang first contends that the injunction's restriction regarding where he may maintain a law office is unconstitutional and contrary to the United States Supreme Court's holding in *Sperry v. Florida*, 373 U.S. 379 (1963).  In *Sperry*, the Court held that a practitioner registered to practice before the United States Patent Office, but not licensed to practice law by any state, should not have been enjoined from engaging in his patent practice from Florida.  *Id.* at 381, 404.  Relying on federal supremacy, *see id.* at 383-85, the Court explained that "the State maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of the federal objectives [of the United States Patent Office]" and that "it is entirely reasonable for a practitioner to hold himself out as qualified to perform his specialized work, so long as he does not misrepresent the scope of his license."  *Id.* at 402 & n.47.

**¶26**    The injunction against Lang is not inconsistent with *Sperry*. The San Carlos Apache Tribe is a dependent sovereign nation whose authority to regulate its courts does not enjoy supremacy over the Arizona

Supreme Court's authority to regulate the practice of law outside the Tribe's reservation. *See O'Neil*, 147 P.3d at 216. Ariz. R. Sup. Ct. 42, E.R. 5.5(b)(1), specifically provides that "[a] lawyer who is not admitted to practice in [Arizona] shall not . . . establish an office or other systematic and continuous presence in this jurisdiction for the practice of law." We also agree with the Bar's assertion, reflected in its UPL Advisory Opinion 10-02, that an attorney licensed to practice law in jurisdictions other than Arizona may not regularly practice the law of those jurisdictions from a place of business in Arizona even if he provides full disclosure to clients. UPL Advisory Opinion 10-02 (2010), *available at* http://www.azbar.org/media/75280/upl10-02.pdf. As the Advisory Opinion observes, the Arizona Supreme Court rules do not limit the "practice of law" to Arizona law. *Id.* at 4. And though Ariz. R. Sup. 42, E.R. 5.5(d), allows a non-Arizona lawyer to practice from Arizona as allowed by *federal* law (consistent with *Sperry*), this exception does not authorize the lawyer to practice the law of other states or sovereign nations from Arizona. *Id.* at 5. The injunction properly restricts Lang's practice to the tribal jurisdiction in which he is admitted. Contrary to his contentions, the injunction neither restricts his practice before the tribal court to clients who live on the reservation nor does it require him to reside on the reservation. And the injunction does not infringe upon the Tribe's authority to decide what Lang can and cannot do before the tribal court. We express no opinion on the scope of practice in which Lang could properly engage from an office properly disclosed as located on the reservation.

¶27        Lang next contends that the injunction unconstitutionally prohibits him from referring to himself as a "J.D." or "attorney" despite his law school education and tribal bar admission, and discriminatorily requires him to disclaim Arizona Bar membership in his letterhead and advertising material. As written, these restrictions are proper under the Arizona Supreme Court's rules. Consistent with Ariz. R. Sup. Ct. 31(a)(2)(B)(2), the injunction does not prohibit Lang from referring to his law degree, education, or tribal court admission so long as the reference does not reasonably imply that he is admitted to practice law in Arizona. This limitation is constitutional. *See Bates v. State Bar of Ariz.*, 433 U.S. 350, 383-84 (1977). Further, the requirement that Lang expressly disclaim admission in Arizona in his letterhead and advertising material is reasonably tailored to prevent client confusion while still recognizing Lang's actual qualifications. We also reject Lang's contention that the injunction should anticipate his future admission to other tribal courts. Should Lang actually become admitted in additional jurisdictions, he may at that time ask the superior court to modify the injunction. *See* Ariz. R.

Civ. P. 65(c); *see also Town of Tortolita v. Napolitano*, 199 Ariz. 556, 560, ¶ 12, 20 P.3d 599, 603 (App. 2001); *Nordin v. Kaldenbaugh*, 7 Ariz. App. 9, 15, 435 P.2d 740, 746 (1967).

## CONCLUSION

**¶28** For the reasons set forth above, we affirm the judgment against Lang in its entirety.



Ruth A. Willingham · Clerk of the Court
FILED: MJT