IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WALTER ANSLEY, et al.,
*Plaintiffs/Appellees/Cross-Appellants*,

*v.*

BANNER HEALTH NETWORK, et al.,
*Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 17-0075
FILED 4-3-2018

Appeal from the Superior Court in Maricopa County
No. CV2012-007665
The Honorable J. Richard Gama, Judge, *Retired*
The Honorable Dawn M. Bergin, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

COUNSEL

Levenbaum Trachtenberg, PLC, Phoenix
By Geoffrey M. Trachtenberg, Justin Henry
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

The Entrekin Law Firm, Phoenix
By B. Lance Entrekin
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Gammage & Burnham, PLC, Phoenix
By Richard B. Burnham, Cameron C. Artigue, Christopher L. Hering
*Counsel for Defendants/Appellants/Cross-Appellees*

---

**OPINION**

---

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

**¶1** Banner Health Network and several other hospitals ("the Hospitals") separately contracted with the Arizona Health Care Cost Containment System ("AHCCCS") to serve AHCCCS members. In those contracts, the Hospitals agreed to accept payment from AHCCCS at rates below their customary charges and not to bill members for the balance. The plaintiffs in this case are a class of AHCCCS members ("the Patients") who received settlements or damage awards from third-party tortfeasors for the injuries that required medical treatment. The Patients sued to enjoin the Hospitals from enforcing liens on their tort recoveries for the balance between what AHCCCS paid and the Hospitals' customary charges. We hold that the Hospitals' contracts with AHCCCS incorporated federal law, which bars the Hospitals from enforcing the liens. Accordingly, we affirm the injunction the superior court entered and direct entry of judgment in favor of the Patients on their third-party claim for breach of contract.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** The Hospitals recorded their liens pursuant to two statutes, Arizona Revised Statutes ("A.R.S.") sections 33-931 (2018) and 36-2903.01(G)(4) (2018).[1] The former is a general statute allowing a health-care provider to file a lien for its customary charges against a patient's tort recovery. The latter specifically applies when a hospital has served an AHCCCS member and allows that hospital to "collect any unpaid portion of its bill from other third-party payors or in situations" in which the general medical-lien statute applies.

**¶3** The Patients alleged federal Medicaid law preempts the Arizona lien statutes in cases such as theirs, and sought an injunction barring the Hospitals from recording liens on their tort recoveries. The Patients argued the liens constitute impermissible "balance billing," a term

---

[1] Absent material revision after the relevant date, we cite a statute's current version.

describing a health-care provider's effort to collect from a patient "the difference in the amount paid by Medicaid, or a state plan like AHCCCS, and the amount" the provider typically charges. *Abbott v. Banner Health Network*, 239 Ariz. 409, 412, ¶ 9 (2016).

¶4 Early in the litigation, the superior court dismissed a group of plaintiffs who had settled their lien claims with the Hospitals and entered partial final judgment as to those plaintiffs pursuant to Arizona Rule of Civil Procedure 54(b). Those plaintiffs appealed, arguing their settlements lacked consideration because the Hospitals' liens were preempted by federal law. We accepted that argument, *Abbott v. Banner Health Network*, 236 Ariz. 436, 446, ¶ 30 (App. 2014) ("*Abbott I*"), but the supreme court reversed, *Abbott,* 239 Ariz. 409 ("*Abbott II*"). The supreme court ruled the settlements were valid and made "fairly and in good faith" because the validity of the Hospitals' lien rights was not settled under Arizona law. *Abbott II*, 239 Ariz. at 413, 414, 415, ¶¶ 12, 18, 20.

¶5 Meanwhile, the superior court certified the remaining plaintiffs as a class, and both sides moved for summary judgment on the preemption issue. The superior court ruled in favor of the Patients on their claim for a declaratory judgment under the Supremacy Clause that when a hospital has accepted payment from AHCCCS for treating a patient, a federal regulation, 42 C.F.R. § 447.15 (2018), preempts the hospital's state-law right to a lien on the patient's tort recovery for the balance between what AHCCCS paid and the hospital's customary charges. The court then enjoined the Hospitals from "filing or asserting any lien or claim against a patient's personal injury recovery, after having received *any* payment from AHCCCS for the same patient's care." The court granted summary judgment to the Hospitals, however, on the Patients' third-party-beneficiary claim, which alleged the Hospitals breached their contracts with AHCCCS by imposing the liens. Finally, the superior court awarded attorney's fees to the Patients under the private attorney general doctrine and denied both sides' motions for new trial.

¶6 The Hospitals appealed the preemption ruling and injunction, and the Patients cross-appealed the judgment against them on their contract claim. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).

3

## DISCUSSION

### A.     General Principles.

¶7          A superior court "shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a); *see also Orme School v. Reeves*, 166 Ariz. 301, 309 (1990).  We review a superior court's grant of summary judgment *de novo*, viewing the evidence and reasonable inferences in the light most favorable to the non-moving party.  *Sanders v. Alger*, 242 Ariz. 246, 248, ¶ 2 (2017).

¶8          The Hospitals argue the Patients' declaratory-judgment claim under the Supremacy Clause fails because the Supremacy Clause does not afford a private right of action.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383-84 (2015).  We need not address that issue, because we conclude the superior court erred in denying summary judgment to the Patients on their contract claim.  In addressing that claim, we conclude that (1) federal law preempts the Hospitals' rights under Arizona law to impose liens on the Patients' tort recoveries to recover the balance between what AHCCCS paid the Hospitals and the Hospitals' customary rates, (2) the Patients are third-party beneficiaries of the contracts the Hospitals entered with AHCCCS, and (3) those contracts require the Hospitals to comply with the preemptive federal law.

### B.     Federal Law Preempts the Hospitals' Lien Rights.

¶9          Federal law may preempt state law in one of three ways: Express preemption, field preemption or conflict preemption.  *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698-99 (1984); *White Mtn. Health Ctr., Inc. v. Maricopa County*, 241 Ariz. 230, 239-40, ¶ 33 (App. 2016).[2]  The issue here – conflict preemption – arises when state law stands as an obstacle to the achievement of Congress's full purpose, or when compliance with both federal and state laws is impossible.  *Crisp*, 467 U.S. at 699; *White Mtn.*, 241

---

[2]     The Patients argue our decision in *Abbott I*, which concluded that federal law preempts the lien statutes, *see* 236 Ariz. at 442, ¶ 18, is the law of the case.  In *Abbott II*, however, our supreme court reversed that decision (albeit on other grounds).  *See* 239 Ariz. at 415, ¶ 20.  Assuming the law-of-the-case doctrine might otherwise apply, we decline to apply it here.  *See Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278-79 (App. 1993) (court has discretion whether to apply law-of-the-case doctrine in favor of its own prior decision).

Ariz. at 240, ¶ 33. A federal regulation has the same preemptive effect as a federal statute. *Crisp*, 467 U.S. at 699. Thus, a federal regulation may render unenforceable a state law that is otherwise consistent with federal law. *City of New York v. F.C.C.*, 486 U.S. 57, 63-64 (1988).

**¶10**      Medicaid is a "cooperative federal-state program" that pays for health care for the needy and the disabled. *Douglas v. Indep. Living Ctr. of So. Calif.,* 565 U.S. 606, 610 (2012); 42 U.S.C. § 1396-1 (2018). A state that chooses to participate must "comply with the Medicaid Act and its implementing regulations." *Rehabilitation Ass'n of Va., Inc. v. Kozlowski*, 42 F.3d 1444, 1447 (4th Cir. 1994). To receive federal funds under the program, a state must create a detailed plan that, *inter alia*, specifies "the nature and scope" of the medical services it will cover. *Douglas*, 565 U.S. at 610; *see also* 42 U.S.C. § 1396a(a) (2018). The plan must be approved by the federal Center for Medicare and Medicaid Services ("CMS"), a division of the Department of Health and Human Services ("HHS"), which determines whether the plan complies with federal Medicaid statutes and regulations. *See* 42 U.S.C. § 1396a(b) (plan approval by HHS secretary); 42 U.S.C. § 1316(a) (2018) (granting HHS power to withhold funds if changes to state plan do not comply with federal law); 42 C.F.R. § 430.10 (2018) (describing contents of state plan); s*ee also Spectrum Health Continuing Care Group v. Bowling*, 410 F.3d 304, 313 (6th Cir. 2005) ("state's plan must comply with federal statutory and regulatory standards").

**¶11**      A fundamental principle of the program is that "Medicaid is essentially a payer of last resort." *Kozlowski*, 42 F.3d at 1447. Toward that end, patients must assign the state Medicaid agency their rights "to any payment from a third party that has a legal liability to pay for care and services available under the plan." 42 U.S.C. § 1396k(a)(1)(A) (2018); *see* A.R.S. § 36-2946(A) (2018) (patients must assign "all types of medical benefits"); *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 811 (2003). Accordingly, when a hospital submits a claim, the state Medicaid agency first tries to determine whether a third party (insurer, tortfeasor) may be liable for paying the hospital's fees. *Olszewski*, 30 Cal. 4th at 811. If a third party is implicated, the agency rejects the claim and requires the hospital to determine the amount of the third party's liability. 42 C.F.R. § 433.139(b)(1) (2018). Once the amount of any third-party liability is established, the agency will pay the hospital the difference between the rate it has negotiated with the hospital and what the hospital will receive from the third party. *Id.* When third-party liability is unavailable or unknown, the state agency pays the hospital its negotiated rate for treating the patient. 42 C.F.R. § 433.139(c). If a third party's liability comes to light afterward, the

state agency must seek reimbursement for itself from the third party when it is cost-effective to do so. 42 C.F.R. § 433.139(d).

¶12 Consistent with these rules aimed at limiting the costs that ultimately must be borne by a state Medicaid agency, Arizona law grants AHCCCS the right to a lien on a patient's claim against a tortfeasor to recover what AHCCCS pays to treat the patient. A.R.S. § 36-2915(A) (2018). Moreover, Arizona requires that a hospital that serves an AHCCCS member must seek payment from any liable third party (insurer, worker's compensation carrier, tortfeasor) *before* billing AHCCCS. *See* AHCCCS, Fee-for-Service Provider Manual at 9-1 (Mar. 2014 rev.) ("AHCCCS has liability for payment of benefits after Medicare and all other first- and third-party payer benefits have been paid. Providers must determine the extent of the first- and third-party coverage . . . prior to billing AHCCCS."); *see also* Arizona Administrative Code ("A.A.C.") R9-22-1005 (requiring providers to identify and notify AHCCCS of potential sources of first- and third-party liability). If a third party pays the hospital more than AHCCCS's scheduled rate, AHCCCS will pay the hospital nothing. A.A.C. R9-22-1003 (AHCCCS pays no more than the difference between the scheduled rate "and the amount of the third-party liability"); AHCCCS, *Fee-for-Service Provider Manual* at 9-2 (Mar. 2014 rev.).

¶13 There is no dispute that under applicable federal and state law, if a tortfeasor's liability becomes apparent after AHCCCS has paid a hospital, AHCCCS may demand reimbursement from the tortfeasor. *See* 42 U.S.C. § 1396a(a)(25)(B). The issue here is whether federal law allows a hospital that has accepted payment from AHCCCS to use state lien statutes to recover additional monies from the tortfeasor.

¶14 The Patients argue the Hospitals' liens are invalid under 42 C.F.R. § 447.15, a regulation issued in 1980. *See* 45 Fed. Reg. 24889 (Apr. 11, 1980). Federal regulations dictate the relationship between a state Medicaid agency and the hospitals with which it contracts. As applicable here, § 447.15 mandates that a state may contract only with providers that agree to "accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." The regulation plainly bars a hospital that has contracted with AHCCCS from billing a patient for the balance between what AHCCCS has paid and the hospital's customary rates. We hold this regulation likewise bars a hospital from imposing a lien on the patient's tort recovery for the balance.

6

¶15        A lien is a means of securing a debt; without a debt, there can be no lien. *See Matlow v. Matlow*, 89 Ariz. 293, 298 (1961) ("In the absence of an obligation to be secured there can be no lien."). Once a hospital has accepted payment from AHCCCS for treating a patient, the patient owes the hospital nothing beyond a "deductible, coinsurance or copayment." 42 C.F.R. § 447.15. Because the patient does not owe the hospital the balance between what AHCCCS has paid and the hospital's customary rate, the hospital may not collect that balance by imposing a lien on the patient's property. The patient's property includes his or her recovery from the tortfeasor that caused the injuries requiring treatment. *See Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, 7, ¶ 21 (2002) (noting insured patient's "property interest in his or her tort claim and eventual recovery"); *Bowling*, 410 F.3d at 317 (once a judgment is entered against a tortfeasor or tortfeasor agrees to settlement, "proceeds are no longer the property of the tortfeasor," but belong to the patient.) Just as the hospital may not balance bill by seizing a patient's car or imposing a lien against his or her home, the hospital likewise may not use state lien laws to seize the patient's recovery from the tortfeasor.

¶16        Each court that has addressed the issue likewise has concluded § 447.15 bars a hospital from imposing a lien on funds due a patient from a tortfeasor. *Bowling*, 410 F.3d at 315 ("By accepting the Medicaid payment, the service provider accepts the terms of the contract – specifically that the Medicaid amount is *payment in full*."); *Taylor v. Louisiana ex rel. Dep't of Health & Hosps.*, 7 F. Supp. 3d 641, 644 (M.D. La. 2013) ("Congress did not intend for providers to receive Medicaid reimbursement for patient care and then intercept funds that the patient would otherwise receive."); *Lizer v. Eagle Air Med. Corp.*, 308 F. Supp. 2d 1006, 1009-10 (D. Ariz. 2004) (§ 447.15 preempts right of provider that has accepted payment from AHCCCS to assert lien against patient's tort recovery under A.R.S. § 33-931); *Mallo v. Pub. Health Trust of Dade County, Fla.*, 88 F. Supp. 2d 1376, 1387 (S.D. Fla. 2000) (provider may not balance bill by imposing lien on patient's tort settlement; "health care providers are not entitled to prey on an otherwise poor patient's change in economic status"); *Olszewski*, 30 Cal. 4th at 820 (Medicaid statutes and regulations "are unambiguous and limit provider collections from a Medicaid beneficiary to, at most, the cost-sharing charges allowed under the state plan, even when a third party tortfeasor is later found liable for the injuries suffered by that beneficiary"); *Pub. Health Trust of Dade County, Fla. v. Dade County Sch. Bd.*, 693 So. 2d 562, 566-67 (Fla. Dist. Ct. App. 1996) (Medicaid preempts Florida regulation

allowing provider to balance bill by imposing lien on patient's tort settlement).[3]

¶17      The Hospitals argue that the reference in § 447.15 to "payment in full" limits a provider's right to payment from the state Medicaid agency or from the patient but does not apply to payments the provider might be able to intercept from a third-party tortfeasor.  That interpretation, however, is contrary to the purpose of the regulation and the purpose of the Medicaid Act itself, which is not to "provide financial assistance to providers of care," but to aid the patients who receive care from the providers.  *Green v. Cashman*, 605 F.2d 945, 946 (6th Cir. 1979); *see also Lizer*, 308 F. Supp. 2d at 1009 ("The . . . regulation was passed in order to ensure that this purpose was carried out by preventing providers from intercepting funds on the way to a patient."); *Briarcliff Haven, Inc. v. Dep't of Human Resources of State of Ga.*, 403 F. Supp. 1355, 1363 (N.D. Ga. 1975) ("The [M]edicaid program is not designed to protect providers from the consequences of their business decisions or from business risks.").

¶18      The Hospitals contend that "Congress has never articulated a federal interest in protecting the tort recoveries of Medicaid beneficiaries, and has acted as if the reverse were true."  In support, the Hospitals point to the authorities discussed above that allow state Medicaid agencies to collect from tortfeasors that have injured plan members.  *E.g.*, 42 U.S.C. § 1396a(a)(25)(H), -(45).  The Hospitals cite no federal authority, however, supporting their contention that Congress intended that a provider that chooses to treat a Medicaid member may balance bill by intercepting a member's tort recovery.  On the other hand, the Patients cite a 1967 Senate Report that stated, "As a matter of public policy, it would be best for all concerned . . . if the reimbursement made by the State" constituted a provider's entire compensation.  S. Rep. No. 744, at 187-88 (1967).

¶19      The Hospitals also point to two HHS documents they claim are inconsistent with our analysis.  The first is a response by the Health Care

_____

[3]      *See also Evanston Hosp. v. Hauck*, 1 F.3d 540, 543-44 (7th Cir. 1993) (hospital could not return payment to state Medicaid agency and then assert lien against patient who won a tort judgment; hospital's claim would turn Medicaid "upside down by converting the system into an insurance program for hospitals rather than for indigent patients"); *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 326 (Alaska 2006) ("Medicaid recipients are the intended beneficiaries of the prohibition on balance billing.  That intent is evident from the state and federal Medicaid statutes and regulations and from the terms of the provider agreement.").

Financing Administration to a comment submitted on a draft of a related regulation issued in 1990. *See* 55 Fed. Reg. 1423-02, at 1428 (Jan. 16, 1990) (to be codified at 42 C.F.R. § 447.20). The new regulation required state plans to bar a provider from collecting from a patient "or any financially responsible relative or representative" of the patient when a third party's liability is equal to or greater than the plan's scheduled rate; the provider would not be able to collect anything more than a copay when the third party's liability is less than the scheduled rate. The comment expressed concern that by limiting what a provider could "collect . . . from a representative" of a patient, the proposed regulation would bar a provider from collecting from a patient's insurer or from other "resources available to the" patient. *Id.*; *see also* 42 C.F.R. § 447.20(a) (2018). In response, the agency explained that "[t]he intent of this provision is to protect the Medicaid recipient from being charged for a service in excess of the amounts allowed under the State plan after considering the third party's liability." *Id.* The Hospitals point to the agency's further comment that "[t]he provider is not restricted from receiving amounts from third party resources available to the recipient (or his or her legal representative.")." *Id.* But in making that statement, the agency referenced 42 C.F.R. § 433.139(b)(1), under which a state Medicaid agency may pay a provider only "to the extent that payment allowed under the agency's payment schedule exceeds the amount of the third party's payment." Contrary to the Hospitals' assertion, the agency's comment was not directed to § 447.15; it was referencing a provider's right to seek payment from a third party *before* accepting payment from the state agency, not after.

¶20 The Hospitals also cite a 1997 letter from the Acting Director of the Health Care Financing Administration that they say construed § 447.15 to permit a provider that has treated a Medicaid patient to return the state agency's payment and seek its customary rates from the patient's tort recovery. But the letter does not constitute formal agency policy or even guidance. *See Bowling*, 410 F.3d at 318 (referenced letter "is neither listed on the [agency] website . . . nor published elsewhere"). Moreover, the mechanism outlined in the letter is inconsistent with the reimbursement scheme of the Medicaid Act, which requires patients to assign the state agency their rights to payment from third parties for medical expenses. *Id.* at 320 (citing 42 U.S.C. § 1396k(a)(1)(A)).

¶21 As applied to the Patients and the Hospitals in this case, the two Arizona lien statutes under which the Hospitals imposed their liens violate the federal regulation's ban on balance billing by an AHCCCS provider. As relevant here, A.R.S. § 33-931(A) states that a provider

is entitled to a lien for the care and treatment or transportation of an injured person. The lien shall be for the claimant's customary charges for care and treatment [and] extends to all claims of liability or indemnity, except health insurance and underinsured and uninsured motorist coverage . . . , for damages accruing to the person to whom the services are rendered . . . on account of the injuries that gave rise to the claims and that required the services.

The statute specifically applying to hospitals that serve AHCCCS members states:

Payment received by a hospital from [AHCCCS] . . . is considered payment by [AHCCCS] of [AHCCCS's] liability for the hospital bill. A hospital may collect any unpaid portion of its bill from other third-party payors or in situations covered by [A.R.S. § 33-931].

A.R.S. § 36-2903.01(G)(4). These two statutes purport to allow a hospital that has accepted payment from AHCCCS to impose a lien on the patient's claim against a tortfeasor for the injuries that required the services for which AHCCCS paid the hospital. But under 42 C.F.R. § 447.15, the Supremacy Clause of the United States Constitution and the authorities cited above, these statutes are invalid to the extent that they allow a hospital to impose a lien on a patient's tort recovery for the balance between the hospital's customary rates and what it accepted from AHCCCS for treating the patient.

¶22 The Hospitals raise two final arguments in support of their contention that federal Medicaid law does not preempt their rights under the two Arizona lien statutes. They argue first that when CMS, the division of HHS that oversees Medicaid, approved Arizona's AHCCCS plan, it impliedly approved the two Arizona lien statutes and the rights they grant providers to intercept patients' tort recoveries. But the Hospitals cite nothing in the record, the AHCCCS plan or the law to support the premise that in approving Arizona's plan, CMS had the authority to review – or actually did review – any state statute that might bear in some way on the state's Medicaid program. Contrary to the Hospitals' contention, CMS determines only whether the *plan* a state submits conforms with the Medicaid Act and related federal regulations; Congress has not granted the agency the authority to determine the validity of state law. *See* 42 C.F.R. § 430.14 (2018); *see also* 42 C.F.R. § 430.10. And nothing in our record supports

the proposition that Arizona's state plan includes or incorporates the two lien statutes at issue.

¶23        The cases the Hospitals cite offer no support for their contention that CMS approval of a state Medicaid plan signifies the agency's approval of all relevant state statutes. *See Cmty. Health Care Ass'n of N.Y. v. Shah*, 770 F.3d 129, 144 (2d Cir. 2014) (CMS review of provider payment schedules "as amendments to the state plan"); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 596 (5th Cir. 2004) (CMS's "review and determination definitively indicate whether it interprets a *state plan or amendment* to be in conformity with the [federal] statute.") (emphasis added); *Pharm. Research & Mfrs. of Am. v. Thompson*, 362 F.3d 817, 821-22 (D.C. Cir. 2004) (review of validity of state plan).  In sum, contrary to the Hospitals' contention, CMS approval of a state Medicaid plan does not mean that the agency necessarily approved corresponding state statutes.  *See Olszewski*, 30 Cal. 4th at 825.

¶24        Second, the Hospitals argue that federal law must not preempt their rights under applicable state lien law because the AHCCCS plan allows providers to use liens to balance bill, and CMS approved the AHCCCS plan.  But nothing in the Arizona plan addresses, let alone endorses, the right of a hospital to accept payment from AHCCCS, then impose a lien on a patient's tort recovery for the balance between the AHCCCS payment and the hospital's customary rates.

¶25        For their contention that the Arizona plan authorizes such liens, the Hospitals rely on a brief portion of "Attachment 4.19-A," a 66-page section of the AHCCCS plan titled "Methods and Standards for Establishing Payment Rates [for] Inpatient Hospital Care."  In the definitions section, Attachment 4.19-A provides as follows:

> Prospective rates are inpatient hospital rates defined in advance of a payment period and represent payment in full for covered services excluding any quick-pay discounts, slow pay penalties, and third party payments regardless of billed charges or individual hospital costs.

The Hospitals contend this language means that even after a hospital has accepted "payment in full" from AHCCCS for treating a patient, the Arizona plan allows it to impose a lien on the patient's tort recovery as a permissible "third party payment."

¶26        The brief reference in Attachment 4.19 to "third party payments," which does not mention the word "lien" and which is found in a section of the plan setting out rates AHCCCS will pay hospitals, does not

constitute an endorsement of the right of a hospital to accept payment from AHCCCS, then balance bill by imposing a lien on the patient's tort recovery. As set out in ¶ 12, *supra*, because AHCCCS is the "payor of last resort," a hospital must determine whether a third party may be liable for the cost of treatment before the hospital bills AHCCCS; if it ascertains that a third party is liable, the hospital may bill AHCCCS only for the difference between what it has recovered from the third party and the AHCCCS scheduled rate. Given that, we understand the reference to "third party payment" in Attachment 4.19-A to refer to a payment made *before* the hospital accepts payment from AHCCCS, not after.

**¶27** The Hospitals also point to A.A.C. R9-22-1007 as support for their contention that CMS approved balance billing when it approved Arizona's AHCCCS plan. The cited regulation is titled "Notification for Perfection, Recording, and Assignment of AHCCCS Liens." It requires that when a hospital has treated an AHCCCS member for an injury "reflecting the probable liability of a first- or third-party," the hospital must, within 30 days of discharging the patient, notify AHCCCS "under R9-22-1008" or mail the agency "a copy of the lien the hospital proposes to record or has recorded under A.R.S. § 33-932." A.A.C. R9-22-1007. The Hospitals argue the regulation effectively acknowledges a hospital's right to record a lien against a patient's tort recovery after accepting payment from AHCCCS. But read in context with A.A.C. R9-22-1008, which requires providers to notify AHCCCS of the "[a]mount estimated to be due for care of member," it is clear that the former regulation concerns a lien that would be recorded *before* AHCCCS determines what to pay the hospital, not after. *See* ¶¶ 11-12, *supra*.

**¶28** The Hospitals' argument also disregards the mandate in A.A.C. R9-22-702(B) that a provider "must accept payment from [AHCCCS] or a contractor as payment in full." Beyond repeating the requirement prescribed by 42 C.F.R. § 447.15, the Arizona regulation goes on to specify limited circumstances under which a provider may demand payment from a patient. *See* A.A.C. R9-22-702(C), (D). As relevant here, the regulation allows a provider to pursue a patient only (1) to collect a copayment and (2) to collect "that portion of a payment made [to the patient] by a third party" that is subject to the patient's "statutory assignment of rights to AHCCCS." A.A.C. R9-22-702(D); *see also* A.R.S. §§ 36-2946(A) (patient's assignment of medical benefits), 36-2915(A) (AHCCCS lien on patient's tort claim). In other words, the only specified circumstance in which a hospital may demand that a patient turn over the proceeds of a tort recovery is when those proceeds are subject to an assignment or lien in favor *of AHCCCS*. There is no corresponding provision in the regulation allowing a hospital

to demand that a patient relinquish a tort recovery to satisfy the *hospital's* lien rights.

¶29 In the context of these provisions and those discussed ¶¶ 12-13 *supra*, the provisions in the AHCCCS plan that the Hospitals cite are part and parcel of a provider's duty under the plan to "cost avoid" before it bills AHCCCS, not a license to accept payment from AHCCCS, then impose a lien against the patient's tort recovery for the balance between that payment and the provider's customary rates. Accordingly, when CMS approved the AHCCCS plan, it did not authorize the Hospitals to accept payment from AHCCCS, then enforce liens against patients' recoveries from tortfeasors.

¶30 In sum, and in accord with every other judicial decision we have located on the issue, we conclude that federal law, specifically 42 C.F.R. § 447.15, preempts Arizona's lien statutes to the extent they allow a provider to accept payment from AHCCCS, then impose a lien on the patient's tort recovery for the balance between what AHCCCS paid it and the provider's customary rates.

## C. The Patients' Claim for Breach of the Provider Agreements.

¶31 Federal law spells out the provisions that must be contained in the Participating Provider Agreements ("PPAs") that a state enters with providers to serve patients under Medicaid. *See* 42 C.F.R. §§ 434.1(b) (2018), 434.6(a) (2018). The Patients argue they are third-party beneficiaries of PPAs, signed by the Hospitals and AHCCCS between 1994 and 2010, which incorporate federal law preempting Arizona's lien laws.

### 1. Rights as third-party beneficiaries of the PPAs.

¶32 Under Arizona law, a contract may allow a claim by a purported third-party beneficiary only if (1) "an intention to benefit [the claimant is] indicated in the contract itself"; (2) "[t]he contemplated benefit [is] both intentional and direct"; and (3) "it . . . definitely appear[s] that the parties intend to recognize the third party as the primary party in interest." *Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 180 Ariz. 548, 552 (App. 1994) (quoting *Norton v. First Fed. Sav.*, 128 Ariz. 176, 178 (1981)). In *Nahom* we held that a patient was a third-party beneficiary entitled to enforce a hospital's agreement with the patient's insurer to accept the insurer's payment as payment in full. *Id.* at 550-51, 552.

¶33 Under *Nahom*, if the Hospitals' contracts with AHCCCS bar them from imposing liens on the Patients' tort recoveries, the Patients are third-party beneficiaries of those contracts. *See id.* at 553 (question is

whether claimant is the beneficiary of the particular contract provision on which claim is brought). As in *Nahom*, the Patients are members of a class of individuals who would be the main beneficiaries of a contract provision barring a hospital from imposing a lien on a patient's tort recovery. *See id.* at 552. Thus, *Nahom* controls here: If the PPAs prohibit the Hospitals from balance billing by imposing the liens, the Patients are third-party beneficiaries who may sue to enforce that prohibition. *Accord Linton v. Comm'r*, 65 F.3d 508, 520 (6th Cir. 1995) (patients are third-party beneficiaries of providers' contracts with state Medicaid agency).

### 2. Incorporation of federal law.

¶34 Interpretation of the PPAs is a matter of law that we review *de novo*. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). A contract incorporates the law in force at the time of its execution. *State ex rel. Romley v. Gaines*, 205 Ariz. 138, 142, ¶ 13 (App. 2003) ("Regardless of the language of a contract, it is always to be construed in the light of the law then in force.") (quotation and alteration omitted); *Ward v. Chevron U.S.A. Inc.*, 123 Ariz. 208, 209 (App. 1979) ("The law in force at [the date of execution] form[s] a part of each contract."). Therefore, "a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract." *Banner Health v. Med. Sav. Ins. Co.*, 216 Ariz. 146, 150, ¶ 15 (App. 2007) (quoting *Higginbottom v. State*, 203 Ariz. 139, 142, ¶ 11 (App. 2002)). Similarly, contracts impliedly incorporate valid constitutional provisions and regulations affecting the rights of the parties at the time of execution. *See, e.g.*, *Colman v. Button*, 42 Ariz. 141, 144 (1933) (constitution); *Rehart v. Clark*, 448 F.2d 170, 173 (9th Cir. 1971) (regulation); *cf. Qwest Corp. v. City of Chandler*, 222 Ariz. 474, 484-85, ¶ 34 (App. 2009) (common law).

¶35 At the time the Hospitals entered the PPAs, the Arizona lien statutes at issue here, A.R.S. §§ 33-931 and 36-2903.01(G)(4), were in place; so was the federal regulation prohibiting balance billing, 42 C.F.R. § 447.15. As we have held, the federal regulation preempts §§ 33-931 and 36-2903.01(G)(4) insofar as those statutes allow a hospital that has accepted payment from AHCCCS to impose a lien on a patient's tort recovery for the balance between the AHCCCS payment and the hospital's customary rate. As incorporated by law into the PPAs, § 447.15 therefore invalidated any state-law rights the contracts otherwise might have afforded the Hospitals to impose the liens at issue here. *See Maryland v. Louisiana*, 451 U.S. 725, 747 (1981) ("A state statute is void to the extent it conflicts with a federal statute."); *AES Sparrows Point LNG, LLC v. Smith*, 527 F.3d 120, 125-26 (4th

Cir. 2008) (preempted state law "unenforceable under the Supremacy Clause").

¶36        Two versions of express "compliance-with-law" clauses in the PPAs only bolster our conclusion that the contracts required the Hospitals to comply with 42 C.F.R. § 447.15. In the first version, the General Terms and Conditions included this term:

> 6. The Provider shall comply with all federal, State and local laws, rules, regulations, standards and executive orders governing performance of duties under this Agreement, without limitation to those designated within this Agreement.

The like provision in the second version simply stated that the provider agrees "[t]o comply with all applicable Federal and State laws and regulations."

¶37        The Hospitals argue the PPAs do not encompass subsequent changes in the law. *See, e.g.*, *Fla. E. Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125, 1130 (7th Cir. 1994) ("[S]ubsequent changes in the law that are not anticipated in the contract generally have no bearing on the terms of their agreement."); *Dairyland Greyhound Park, Inc. v. Doyle*, 719 N.W.2d 408, 429-33 (Wis. 2006) (post-contract amendment to statute not incorporated in parties' agreement). But the relevant law has not changed: HHS issued 42 C.F.R. § 447.15 in 1980 – before the PPAs at issue here were executed – and the regulation has not materially changed since then. *See* 45 Fed. Reg. 24889 (Apr. 11, 1980). Nor does our decision that federal law preempts the lien statutes depart from Arizona common law. Excepting our earlier decision in *Abbott I* (later vacated, and which held the lien statutes were preempted), no Arizona appellate court has decided the issue. *Abbott II,* 239 Ariz. at 414, ¶ 17, *vacating Abbott I*, 236 Ariz. 436.

¶38        The Hospitals argue otherwise, citing Arizona cases that refer to the medical-lien statutes and the rights they purport to grant AHCCCS providers. But none of the cases the Hospitals cite addresses (or even mentions) whether 42 C.F.R. § 447.15 or any other federal authority preempts a provider's right to balance bill under Arizona law. *See*, *e.g.*, *Andrews v. Samaritan Health Sys.*, 201 Ariz. 379, 384, ¶ 17 (App. 2001); *LaBombard v. Samaritan Health Sys.*, 195 Ariz. 543, 549, ¶ 23 (App. 1998). Nor does our supreme court's decision in *Abbott II*, 239 Ariz. at 414, ¶¶ 17-19, reach the issue of preemption. Although the court stated that the preemptive effect of federal law on providers' lien rights "was not settled in Arizona," it made that comment in explaining that the parties' accord and

satisfaction was valid because no Arizona appellate court had ruled on the issue. *Id.*

¶39        Finally, the Hospitals assert that the parties to the PPAs – the Hospitals themselves and AHCCCS – intended that the Hospitals would be able to enforce liens on patients' recoveries from tortfeasors.  In support of this argument, the Hospitals cite A.A.C. R9-22-1007.  As discussed, ¶ 27 *supra*, we do not accept the Hospitals' interpretation of that regulation.  In any event, however, by agreeing in the PPAs to comply with federal law, the Hospitals agreed that a federal regulation preempting their state-law lien rights would trump any lien right allowed by AHCCCS regulation.

¶40        Accordingly, the Hospitals breached a duty owed to the Patients under the PPAs when they imposed the liens at issue here because those liens were invalid under federal law.  We hold the superior court erred when it denied the Patients' motion for summary judgment on their claim for breach of the PPAs, and direct entry of judgment in the Patients' favor on that claim.

## D.        The Breadth of the Injunction.

¶41        As noted, ¶ 5 *supra*, the superior court ruled on the Patients' claim under the Supremacy Clause that 42 C.F.R. § 447.15 preempts the Hospitals' state-law lien rights and ordered the Hospitals to discharge all liens they had recorded against the Plaintiffs' tort recoveries.  At the same time, the court permanently enjoined the Hospitals from filing a lien against any patient's tort recovery after having accepted payment from AHCCCS for treating the patient.  Having concluded that the Patients were entitled to entry of judgment on their claim for breach of contract, we hold the superior court did not err by ordering the existing liens discharged and enjoining the Hospitals from filing future liens in the same circumstances.

¶42        The Hospitals do not contend that general equitable principles bar the injunction the superior court entered.  *See* Ariz. R. Civ. P. 23(b)(2) (class-action treatment when defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole"); Restatement (Second) of Contracts § 357(2) (1981) (court has discretion in contract action to enjoin breach of duty "of forbearance").  The Hospitals argue, however, that the injunction is overly broad in that it purports to extend to medical services not funded by AHCCCS.  We review the superior court's grant of an injunction for abuse of discretion but review its application of law *de novo*.  *See Cheatham v. DiCiccio*, 240 Ariz. 314, 317-18, ¶

8 (2016). The superior court abuses its discretion if it applies the incorrect substantive law or injunction standard or bases "its decision on an erroneous material finding of fact." *TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489, 492, ¶ 8 (App. 2013).

**¶43** In relevant part, the injunction the superior court entered permanently enjoins the Hospitals "from filing or asserting any lien or claim against a patient's personal injury recovery, after having received *any* payment from AHCCCS for the same patient's care." (Emphasis in original.) The Hospitals argue the reference to "any payment" may prevent a hospital from filing a lien to collect fees it is owed for services for which AHCCCS has not paid the hospital. The Hospitals contend there are situations in which only some of the services they have provided a patient are covered by AHCCCS, and they argue the injunction erroneously will bar them from seeking payment for services for which AHCCCS has not paid.

**¶44** The Hospitals, however, do not point to anything in the record showing that such a situation actually has occurred, and we normally will not issue advisory opinions on issues not squarely before us. *Sw. Barricades, L.L.C. v. Traffic Mgmt., Inc.*, 240 Ariz. 139, 142, ¶ 17, n.3 (App. 2016). Should the situation the Hospitals posit arise, they "will be able, at that time, to apply to the superior court for appropriate modification." *TP Racing*, 232 Ariz. at 496, ¶ 25; *see also State v. Portland Cement Ass'n*, 142 Ariz. 421, 425 (App. 1984) (court of original jurisdiction has power to modify its own injunction when circumstances change).

### E. Attorney's Fees.

**¶45** After prevailing on their claim based on the Supremacy Clause, the Patients sought attorney's fees under the private attorney general doctrine, and the court entered an award of $1,221,902. *See generally Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609 (1989) (private attorney general doctrine allows fees award to party that has vindicated an important public right).

**¶46** On appeal, the Hospitals argue the private attorney general doctrine does not allow a fees award on a preemption claim brought under the Supremacy Clause. *See Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 245-71 (1975) (doctrine not applicable in challenge to federal agency action); *Challenge, Inc. v. State ex rel. Corbin*, 138 Ariz. 200, 206 (App. 1983) (federal law governs availability of fees in claim brought under 42 U.S.C. § 1983). We need not decide whether the doctrine applies in a preemption

claim brought under the Supremacy Clause because we conclude the superior court had discretion to award fees under A.R.S. § 12-341.01(A) (2018) to the Patients on their third-party claim for breach of contract.

¶47        As for the amount of the award, the Hospitals contend the superior court abused its discretion by failing to discount the fees the Patients sought for work performed (1) in a similar federal-court case they voluntarily dismissed before commencing this one; and (2) on issues pertaining to the group of *Abbott* plaintiffs who had settled their lien claims with the Hospitals. "We review the amount of the superior court's attorney fees and costs awards for an abuse of discretion." *Lee v. ING Inv. Mgmt., LLC,* 240 Ariz. 158, 161, ¶ 11 (App. 2016).

¶48        The Hospitals argue that more than $485,000 of the fees awarded were incurred not in this case but in a federal lawsuit the Patients filed, then voluntarily dismissed, before refiling their claims in superior court. The Patients contend that those fees included the time spent in "vet[ting] hundreds of potential class representatives" for the claims, researching Medicaid plans across the country and interviewing expert witnesses.

¶49        The Hospitals cite *Vicari v. Lake Havasu City*, 222 Ariz. 218, 223-24, ¶¶ 18-21 (App. 2009), for the proposition that the defendant is the prevailing party when a plaintiff voluntarily dismisses the complaint. The issue here, however, is whether a court abuses its discretion in awarding fees for legal work performed in connection with a prior case before dismissing it, when that work is integral to the claimant's successful prosecution of a subsequent claim. The superior court here did not abuse its discretion in declining to reduce its fees award to take into account work performed in the federal action. *See First Nat. Bank of Ariz. v. Cont'l Bank*, 138 Ariz. 194, 200 (App. 1983) ("pre-complaint investigation and evaluation of the potential claim is part of the process and expense of litigation").

¶50        The Hospitals finally argue that the superior court abused its discretion in awarding fees for work performed for the group of patients whose claims were dismissed in *Abbott II*. The Hospitals contend that $60,442 of the fees the Patients were awarded were incurred in connection with superior court proceedings involving those plaintiffs.

¶51        In determining the reasonableness of the number of hours expended by an attorney, the superior court must consider whether the claimed work "would have been undertaken by a reasonable and prudent lawyer to advance or protect [the] client's interest." *Schweiger v. China Doll*

*Rest., Inc.*, 138 Ariz. 183, 188 (1983). "Furthermore, time spent on unsuccessful issues or claims may not be compensable." *Id.* On the other hand, when a party has "accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories. Where a party has achieved only partial or limited success, however, it would be unreasonable to award compensation for all hours expended, including time spent on . . . unsuccessful issues or claims." *Id.* at 189; *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 266-67, ¶ 24 (App. 2004).

¶52 When the superior court in this case ruled on the Patients' fee request in 2014, that court could not know that the supreme court ultimately would reject the *Abbott* plaintiffs' claims. Although the Hospitals addressed this issue in a motion for new trial filed after the case was reassigned to another division of the Maricopa County Superior Court, the judge newly assigned to the case declined to reconsider the fees award in light of the supreme court's decision in *Abbott II*. We remand the fees award to the superior court so that it may exercise its discretion to review the Patients' claim for fees incurred in connection with the claims brought by the *Abbott* plaintiffs.

## CONCLUSION

¶53 We hold the Patients are third-party beneficiaries of the contracts the Hospitals entered with AHCCCS to provide medical services to AHCCCS members. We further hold those contracts required the Hospitals to comply with federal law, including 42 C.F.R. § 447.15, which preempts A.R.S. §§ 33-931 and 36-2903.01(G)(4) to the extent those statutes allow a health-care provider that has accepted payment from AHCCCS to impose a lien on a patient's tort recovery for the balance between the AHCCCS payment and the provider's customary rates. Accordingly, we reverse the superior court's entry of summary judgment in favor of the Hospitals on the Patients' claim for breach of contract and direct entry of judgment in the Patients' favor on that claim. On this basis, and without addressing the judgment the superior court entered on the Patients' claim for declaratory relief under the Supremacy Clause, we affirm the injunction the superior court entered. We remand the attorney's fees award and direct

the superior court to reconsider whether the Patients are entitled to receive the full amount of the fees incurred in the superior court in connection with the *Abbott* case. Finally, we award the Patients their costs on appeal and their attorney's fees pursuant to A.R.S. § 12-341.01(A), contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA