307 P.3d 56

**TP RACING, L.L.L.P., Plaintiff/Counter–Defendant/Appellant,**

and

**Jeremy Ellis Simms and Serena Simms, Counter–Defendants/Appellants,**

v.

**Ronald A. SIMMS, a married man dealing with his sole and separate property; Ronald A. Simms, as Trustee of Ronald A. Simms Perpetual Asset Shield Trust; Ronald A. Simms, as Trustee of RAS Trust; RASCD, Inc., a California corporation, Defendants/Counter–Claimants/Appellees.**

No. 1 CA–CV 12–0306.

Court of Appeals of Arizona, Division 1, Department A.

July 25, 2013.

---

Stinson Morrison Hecker LLP by Michael Charles Manning, James M. Torre, Phoenix, Attorneys for Plaintiff/Counter-defendants/Appellants.

Greenberg Traurig LLP by E. Jeffrey Walsh, Stacey F. Gottlieb, Nicole M. Goodwin, Phoenix, Attorneys for Defendant/Counter-claimants/Appellees.

## OPINION

SWANN, Judge.

¶ 1 This case presents the question whether Arizona law requires the automatic removal of a general partner from a limited partnership when a legally defective proceeding for dissolution remains pending against the general partner for more than 120 days. We hold that the relevant provision of Arizona's Limited Partnership Act, A.R.S. § 29–323(5), does not require removal in such circumstances.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This appeal arises from a dispute between two brothers, Jerry Simms and Ron Simms. Jerry and RASCD, Inc., a corporation of which Ron is the sole officer and shareholder, each own 50% of J & R Racing, LLC. Jerry is J & R Racing's manager and has authority to conduct its day-to-day business, but RASCD's consent is required for all other decisions.

¶ 3 J & R Racing is the sole general partner of TP Racing, LLLP, which owns and operates a horse-racing facility. J & R Racing was formed for the express purpose of acting as TP Racing's general partner, and has exclusive authority to manage TP Racing's affairs. TP Racing's limited partners include Jerry, Ron, and the Ronald A. Simms Perpetual Asset Shield Trust and The RAS Trust (referred to herein, collectively and individually, as "the Trusts"), for which Ron is trustee.

¶ 4 In July 2010, TP Racing commenced two actions, which were later consolidated: an action against Ron, alleging that he had defaulted on his obligations under a promissory note; and an action against Bruin Corporation, a company owned by Ron, alleging that Bruin had wrongly refused to take over the management of a trailer park when TP Racing's lease of the property from Bruin expired. In response, in February 2011, Ron, the Trusts, and RASCD filed a pleading styled a "Verified Third–Party Complaint," asserting claims against Jerry related to his management of TP Racing through his role as J & R Racing's manager. The pleading named J & R Racing as a third-party defendant and included the following claim, by which Ron and the "Ron Simms Limited Partners" (defined in the pleading as the Trusts) requested TP Racing and J & R Racing's dissolution:

## COUNT 17

### Judicial Dissolution of TP Racing, L.L.L.P. (A.R.S. § 29–345)

429. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

430. Jerry Simms has been adjudicated unsuitable to hold gaming certification.

431. Gaming certification is necessary for TP Racing to achieve its business objectives.

432. There is a strong likelihood that other jurisdictions will deny TP Racing continued permission to simulcast horse racing events to their jurisdictions.

433. Ron Simms and the Ron Simms Limited Partners seek a declaratory judgment from this Court under A.R.S. § 29–345 that it is no longer reasonably practicable for TP Racing to carry on its business in conformity with the partnership agreement.

434. Ron Simms and the Ron Simms Limited Partners further seek, in the alternative to removal of Jerry Simms and J & R Racing only, *a decree from this Court pursuant to A.R.S. § 29–345 dissolving J*

& R Racing and TP Racing, and selling the assets of the limited partnership.

(Emphasis added.) [1]

¶5 In January 2012, Jerry sent Ron a "Notice of Partnership Meeting for Election of New General Partner of TP Racing, L.L.L.P., and Nomination for Election." The notice asserted that the pendency of the dissolution claim had, by operation of law, withdrawn J & R Racing from its position as TP Racing's general partner pursuant to Section 9.1 of TP Racing's operating agreement and A.R.S. § 29–323(5). The notice stated that a majority of TP Racing's limited partners had nominated, voted for, and elected Jerry as TP Racing's interim general partner pursuant to Sections 9.2 and 9.3 of the operating agreement. The notice also set a partnership meeting for the election of a new permanent general partner.

¶6 Upon receiving the notice, Ron and RASCD promptly moved for a temporary restraining order and preliminary injunction to prevent the election and to allow J & R Racing to continue to serve as TP Racing's general partner. After an evidentiary hearing, the superior court concluded that J & R Racing had not been withdrawn as TP Racing's general partner, and entered an injunction in favor of Ron and RASCD.

¶7 Jerry and TP Racing timely appeal, contending that the injunction should be vacated because the dissolution claim caused J & R Racing's withdrawal as TP Racing's general partner under A.R.S. § 29–323(5). We have jurisdiction under A.R.S. § 12–2101(A)(5)(b).

## STANDARD OF REVIEW

██ ¶8 We review the grant of a preliminary injunction for an abuse of discretion. *Valley Med. Specialists v. Farber,* 194 Ariz. 363, 366, ¶9, 982 P.2d 1277, 1280 (1999). An abuse of discretion exists if the superior court applied the incorrect substantive law or preliminary injunction standard, based its decision on an erroneous material finding of

fact, or applied the appropriate preliminary injunction standard in a manner resulting in an abuse of discretion. *McCarthy W. Constructors, Inc. v. Phx. Resort Corp.,* 169 Ariz. 520, 523, 821 P.2d 181, 184 (App.1991). We review underlying statutory interpretation issues de novo. *Kromko v. City of Tucson,* 202 Ariz. 499, 501, ¶4, 47 P.3d 1137, 1139 (App. 2002).

## DISCUSSION

### I. THE CLAIM FOR J & R RACING'S DISSOLUTION DID NOT CAUSE J & R RACING TO WITHDRAW AS TP RACING'S GENERAL PARTNER UNDER A.R.S. § 29–323(5).

¶9 Under Section 9.1 of TP Racing's operating agreement, a general partner withdraws upon the transfer of its entire interest in the partnership or upon any event of withdrawal set forth in A.R.S. § 29–323. Under § 29–323(5), an entity is deemed withdrawn as general partner if "one hundred twenty days after the commencement of any proceeding against the general partner seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation, the proceeding has not been dismissed...."

¶10 The superior court relied on the comment to the Uniform Limited Partnership Act on which A.R.S. § 29–323 is modeled to conclude that the claim for J & R Racing's dissolution did not effect the withdrawal of J & R Racing as TP Racing's general partner because the claim did not "constitute or invoke a bankruptcy or similar claim or procedure." The parties dispute the correctness of the court's restrictive interpretation of A.R.S. § 29–323(5), but we need not decide whether the statute should be so read to decide this case. Even under a broad interpretation that would include all types of dissolution actions—including those that do not relate to financial insolvency—the claim here could not lead to the relief requested as a matter of law, and therefore could not have

---

1. The February 2012 amended answer and counterclaim added the following parenthetical beneath the renumbered count's title: "(Ron Simms, RASCD, and the Ron Simms Limited Partners Against Jerry Simms, J & R Racing, and TP Racing)," but the allegations remained unchanged.

the secondary effect of causing J & R Racing's removal as the general partner.[2]

¶ 11 Jerry and TP Racing urge us to interpret A.R.S. § 29–323(5) in the most literal sense. Under their reading, *any* proceeding seeking dissolution under *any* statute, law or regulation that has not been dismissed within 120 days results in automatic withdrawal of the general partner. "The court's chief goal in interpreting a statute is 'to fulfill the intent of the legislature that wrote it.'" *Bilke v. State,* 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003) (quoting *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993)). "If the language is clear, the court must 'apply it without resorting to other methods of statutory interpretation,' unless application of the plain meaning would lead to impossible or absurd results." *Id.* (quoting *Hayes v. Cont'l Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994)). We conclude that Jerry and TP Racing's interpretation would lead to absurd results. We instead construe the statute to achieve the legislature's rational intent.

¶ 12 By requiring that a dissolution claim survive dismissal for 120 days before it may effect withdrawal, A.R.S. § 29–323(5) appears intended to prevent frivolous actions from causing catastrophic consequences to general partners and the limited partnerships they serve. But we do not discern a legislative intent to require withdrawal merely because an action that *nominally* seeks dissolution remains pending for more than 120 days when it is legally impossible for the action actually to cause dissolution.

¶ 13 Absurd results under Jerry and TP Racing's alternative interpretation are not difficult to imagine. An action is "commenced" when the complaint is filed, Ariz. R. Civ. P. 3, and the statutory deadline for service of process is 120 days thereafter. Ariz. R. Civ. P. 4(i). Under a literal interpretation, therefore, even a frivolous action that seeks dissolution under, say, 42 U.S.C.

§ 1983 could require removal by operation of law. And such an action, if not immediately served, could well be pending for more than 120 days before the general partner is even on notice of the need to seek dismissal. We think an interpretation of the statute that would require removal in such circumstances would do violence to the legislature's intent in passing the statute. To give effect to the purpose of the statute, its reference to a "proceeding against the general partner seeking ... dissolution" must be limited to those cases that could legally cause dissolution, and its time requirement must be read to include the time during which the general partner has notice of the risk it faces.[3]

¶ 14 We agree with the Texas Court of Appeals' reasoning in *Kenworthy v. Kenworthy Corp.,* construing an identical statute modeled on the same uniform act:

[F]or us to hold that suits seeking dissolution of the limited partnership, as opposed to the dissolution of the general partner, create an "event of withdrawal" would be contrary to the clear purpose of the statute. Otherwise, displeased limited partners could file a lawsuit seeking dissolution of the partnership, name the general partner as a defendant, wait for 120 days (which is not at all an inordinate time for a lawsuit to be pending in litigation between partners), and then recover more or less by default on contested issues involved in the dissolution of the partnership, not the dissolution of the general partner, simply because the suit was not over in 120 days. According to the plain meaning of Section 4.02(a)(5), we cannot say that the legislature intended such a result.

149 S.W.3d 296, 299 (Tex.App.2004).

¶ 15 We now turn to the question whether the dissolution claim in Ron, RASCD, and the Trusts' pleading amounted to a colorable claim for dissolution, applying

2. "We will affirm the trial court's decision if it is correct for any reason, even if that reason was not considered by the trial court." *Hill v. Safford Unified Sch. Dist.,* 191 Ariz. 110, 112, 952 P.2d 754, 756 (App.1997).

3. We recognize the importance of applying statutes according to their plain meaning whenever possible. The statute's terms broadly provide that withdrawal may be caused by "any proceeding" brought under "any statute, law or regulation." An interpretation that restricts the scope of the statute only to proceedings alleging insolvency would improperly render meaningless the statute's use of the word "any."

the standards for dismissal under Ariz. R. Civ. P. 12(b). We conclude that the pleading failed to state a claim upon which the dissolution of J & R Racing could be granted.

¶ 16 First, the claim's factual allegations were completely unrelated to J & R Racing. The claim alleged that TP Racing's business was no longer reasonably practicable because of issues with gaming certification and event simulcasts. No factual allegations were made concerning J & R Racing. Even assuming the truth of the allegations and their reasonable inferences, *Cullen v. Auto–Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008), the allegations could provide grounds for TP Racing's dissolution only. Further, the claim was brought under a statute that applies to TP Racing only.[4] The claim cited A.R.S. § 29–345, which governs dissolution of limited partnerships. J & R Racing is not a limited partnership; it is a limited liability company. Judicial dissolution of limited liability companies is governed by A.R.S. § 29–785, not § 29–345.

¶ 17 Second, the claim was not brought by parties authorized to cause J & R Racing's dissolution under A.R.S. § 29–785. Section 29–785 provides for judicial dissolution of a limited liability company "[o]n application by or for a member." The claim was brought by Ron and the Trusts, who are members of TP Racing but not J & R Racing. Neither Ron nor the Trusts could have commenced a meritorious proceeding to seek J & R Racing's dissolution under A.R.S. § 29–785. The only parties with the power to seek that relief were Jerry and RASCD, and neither did so. Though the pleading names RASCD as a party, RASCD was specifically omitted from the dissolution claim. And though Ron is authorized to act on RASCD's behalf as its officer, he did not purport to do so in the pleading, and the record reveals no judicial finding that RASCD's corporate form should be disregarded. *See Dietel v. Day*, 16 Ariz. App. 206, 208, 492 P.2d 455, 457 (1972) ("As a general rule, a corporation will be treated as a legal entity until sufficient reason appears to disregard the corporate form.").

¶ 18 Finally, it is hardly surprising that the action purportedly giving rise to removal was not dismissed within 120 days, because it was commenced by parties who *oppose* removal. Because those parties never intended the proceeding to give rise to removal under A.R.S. § 29–323(5), we would not have expected them to move to dismiss their own claim.

¶ 19 As a matter of law, the dissolution claim could not support its requested relief with respect to J & R Racing. Accordingly, the claim could not cause J & R Racing's withdrawal under A.R.S. § 29–323(5). We therefore affirm the superior court's determination that there was no withdrawal.

## II. THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION IN GRANTING THE PRELIMINARY INJUNCTION, OR IN FASHIONING THE INJUNCTION AS IT DID.

¶ 20 Jerry and TP Racing next contend that the preliminary injunction must be vacated because it is overbroad and not justified by the superior court's findings. The injunction provides:

IT IS HEREBY ORDERED that Jerry and TP are immediately enjoined and restrained form [sic] engaging in any of the following activities except upon further order of this Court:

1. Noticing, holding or participating in any meeting of TP, which meeting has as its purpose or effect, in whole or in part, the removal of J & R as the sole General Partner of TP, or the nomination, vote for or election of any other person or entity as General Partner of TP.

2. Taking any other action which has the purpose or effect or [sic] withdrawing or removing J & R as the sole General Partner of TP, or nominating, [or] voting for any other person or entity as General Partner of TP.

---

4. We recognize that a pleading's failure to refer to a specific statute is not necessarily fatal to a claim. *Toney v. Bouthillier*, 129 Ariz. 402, 408, 631 P.2d 557, 563 (App.1981). Here, however, the pleading's citation of the wrong statute suggests that the claim was directed to TP Racing's dissolution, not J & R Racing's dissolution.

¶ 21 An injunction may serve to undo accomplished wrongs, or to prevent future wrongs that are likely to occur. *See* A.R.S. § 12–1801; *Burton v. Celentano*, 134 Ariz. 594, 658 P.2d 247 (App.1982) (affirming injunction requiring removal of barrier constructed in violation of floodplain laws); *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 486, 626 P.2d 1115, 1118 (App.1981) (holding that when wrongful conduct has been discontinued, court "must look at factors which indicate proof of likelihood to engage in future violations" to determine propriety of injunctive relief). A party seeking a preliminary injunction must show a strong likelihood of success on the merits, a possibility of irreparable injury if the injunction is not granted, a balance of hardships weighing in his favor, and public policy favoring the requested relief. *Shoen v. Shoen*, 167 Ariz. 58, 63, 804 P.2d 787, 792 (App.1990). The critical factor is relative hardship, for which the movant must show either "1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and 'the balance of hardships tips sharply' in his favor." *Id.* (quoting *Justice v. Nat'l Collegiate Athletic Ass'n*, 577 F.Supp. 356, 363 (D.Ariz.1983)). If seeking to enjoin future conduct, the movant must also show that it is likely the defendant will engage in the conduct, an inquiry for which the defendant's past conduct is relevant. *Babbitt*, 128 Ariz. at 486–87, 626 P.2d at 1118–19.

### A. The Grant of a Preliminary Injunction Was Not an Abuse of Discretion.

¶ 22 Here, the superior court did not abuse its discretion by granting a preliminary injunction. The dissolution claim did not withdraw J & R Racing as TP Racing's general partner by operation of law under A.R.S. § 29–323(5). Further, RASCD and Ron would be irreparably injured by a partnership election of a new general partner. In such circumstances, RASCD would no longer be able to participate in J & R Racing decisions affecting TP Racing. This would deprive RASCD, and by consequence Ron, of any degree of managerial participation in TP Racing.

¶ 23 We are not persuaded by Jerry and TP Racing's argument that such deprivation could not constitute irreparable harm per se because Ron, RASCD, and the Trusts themselves seek J & R Racing's removal in their pleading. The allegation on which Jerry and TP Racing rely for this proposition is:

> Ron Simms, RASCD and the Ron Simms Limited Partners seek equitable relief in lieu of dissolution of the limited partnership. Specifically, they seek an order removing Jerry Simms as Manager of J & R Racing, and barring him from participating in the management of J & R Racing or TP Racing. *Alternatively, they seek a court order removing J & R Racing as general partner of TP Racing, and appointing a receiver to manage TP Racing until such reasonable time as a majority of the limited partners, exclusive of Jerry Simms and J & R Racing, vote either to continue TP Racing's existence and elect one or more new general partners as successors, or dissolve the limited partnership and sell the assets thereof. See, e.g., Curley v. Brignoli Curley & Roberts Assocs.*, 746 F.Supp. 1208 (S.D.N.Y.1989).

(Emphasis added.) By this allegation, Ron and RASCD request J & R Racing's removal under conditions that would bar Jerry from participating in the election of a new general partner. This requested relief is fundamentally different from the harm that Ron and RASCD would face were J & R Racing deemed withdrawn as general partner under Section 9.1 of TP Racing's operating agreement and A.R.S. § 29–323. Section 9.3 of the operating agreement provides that when a general partner is withdrawn under Section 9.1, TP Racing's limited partners may elect a new general partner by a 65%-interest vote. Jerry's power in such an election would be substantial because he holds about 55% of the interests in TP Racing. Because the crux of this litigation is a dispute between Jerry and Ron, an election under Section 9.3 and an election in the circumstances requested in the pleading are simply not comparable with respect to potential harm to Ron and RASCD.

**B.** *The Scope of the Preliminary Injunction Was Appropriate.*

¶ 24 The superior court did not abuse its discretion by fashioning the preliminary injunction both to restore J & R Racing as general partner and to guard against future unilateral removal attempts. Jerry and TP Racing's attempt to remove J & R Racing as general partner and appoint Jerry as interim general partner based on the dissolution claim provided reasonable grounds upon which the court could conclude that there was a need to preliminarily enjoin future non-court-sanctioned removal until this litigation is resolved.

¶ 25 Jerry and TP Racing's concerns that the injunction may prevent them from ever recognizing a legitimate withdrawal event are unfounded. The injunction expressly allows Jerry and TP Racing to avoid the injunction's restrictions "upon further order of [the superior court]." If future circumstances give Jerry and TP Racing lawful grounds for engaging in conduct proscribed by the injunction, they will be able, at that time, to apply to the superior court for appropriate modification or dissolution of the injunction. Ariz. R. Civ. P. 65(c); *see also Town of Tortolita v. Napolitano,* 199 Ariz. 556, 560, ¶ 12, 20 P.3d 599, 603 (App.2001); *Nordin v. Kaldenbaugh,* 7 Ariz.App. 9, 15, 435 P.2d 740, 746 (1967). And, contrary to Jerry and TP Racing's contention at oral argument on appeal, nothing in the injunction prevents a partnership meeting for the purpose of determining the existence of a legitimate event requiring withdrawal, such as member deadlock within J & R Racing. Nor does the injunction prevent Jerry or TP Racing from seeking relief from the court in those circumstances. The injunction is crafted to prevent Jerry and TP Racing from unilaterally effecting J & R Racing's withdrawal, not to deny them access to the court. We do not construe the injunction as preventing Jerry and TP Racing from requesting that the *court* review the circumstances and order withdrawal if appropriate.

¶ 26 Further, contrary to Jerry and TP Racing's contention, the injunction does not prevent them from acquiescing to Ron, RASCD, and the Trusts' request (quoted in Section II.A above) that J & R Racing be removed under controlled circumstances. Should the parties agree regarding removal conditions, we have little doubt that the court would respond favorably to an application for the injunction's dissolution.

¶ 27 Finally, we reject Jerry and TP Racing's contention that this appeal could itself be considered a violation of the injunction because they seek a decision that would result in J & R Racing's removal as general partner. The right to appeal an injunction is provided by statute. A.R.S. § 12–2101(A)(5)(b). We can conceive of no circumstances in which a party's exercise of its right to appellate review could ever be considered an injunction violation punishable under Ariz. R. Civ. P. 65(j). It is not necessary for the right to appeal to be spelled out as an "exception" in the injunction.

¶ 28 The injunction is reasonably fashioned. It prevents Jerry and TP Racing from unilaterally removing J & R Racing as general partner, but does not prevent them from bringing circumstances warranting withdrawal to the court's attention.

## CONCLUSION

¶ 29 We affirm for the reasons set forth above.

¶ 30 Both Jerry and TP Racing, on the one hand, and Ron, RASCD, and the Trusts, on the other hand, request their attorney's fees and costs on appeal pursuant to TP Racing's operating agreement and A.R.S. §§ 12–341 and 12–341.01. We deny Jerry and TP Racing's requests because they are not the prevailing parties. We conclude that Ron, RASCD, and the Trusts, contrary to their arguments, are not entitled to fees under Section 5.4 of TP Racing's operating agreement. That provision governs expense reimbursements to general partners of TP Racing, and it is inapplicable here. In our discretion, we deny Ron, RASCD, and the Trusts' request for fees under A.R.S. § 12–341.01. As the prevailing parties, they are entitled to an award of costs under A.R.S. § 12–341, upon compliance with ARCAP 21.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and MARIA ELENA CRUZ, Judge.*

---

* The Honorable Maria Elena Cruz, Judge of the Yuma County Superior Court, is authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article 6, Section 3, and A.R.S. §§ 12–145 to –147 (2003).