NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

MIRABELLA AT ASU INC, et al., *Plaintiffs/Appellees*,

*v.*

PEACOCKS UNLIMITED LLC, *Defendant/Appellant*.

No. 1 CA-CV 22-0318
FILED 12-29-2022

Appeal from the Superior Court in Maricopa County
No. CV2021-016159
The Honorable Bradley H. Astrowsky, Judge

**VACATED AND REMANDED**

COUNSEL

Snell & Wilmer LLP, Phoenix
By Adam E. Lang, Andrew M. Jacobs, Eric H. Spencer,
Matt Jarvey, Derek Flint
*Counsel for Plaintiffs/Appellees Mirabella*

Perkins Coie LLP, Phoenix
By Jean-Jacques Cabou, Alexis E. Danneman, Matthew R. Koerner
*Counsel for Plaintiffs/Appellees Kessler et al.*

Zwillinger Wulkan PLC, Phoenix
By Larry Wulkan, Scott H. Zwillinger, Jennifer L. Allen
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

¶1        The superior court granted a preliminary injunction in favor of Mirabella at ASU, Inc. ("Mirabella") and five individual plaintiffs who reside in Mirabella. The injunction requires Peacocks Unlimited, LLC, (doing business as "Shady Park") to comply with time and decibel restrictions for its outdoor music concerts and to otherwise mitigate the resulting noise. Shady Park asks us to reverse the superior court.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mirabella is a high-rise residential building for individuals aged 62 or older on University Drive in the City of Tempe ("Tempe"). Subject to a use permit, Shady Park operates a restaurant across the street from Mirabella that hosts live music events. Shady Park began hosting outdoor music events in 2015, the same year that Arizona State University and Tempe selected Mirabella's location.

¶3        During the COVID-19 pandemic, Shady Park paused outdoor concerts. Mirabella did not open for tenants until early 2021, six years after Shady Park began its concerts but during the concert pause. In May 2021, four months after Mirabella opened, the concerts resumed, and many Mirabella residents complained. That same month, Tempe discovered Shady Park violated its use permit by selling advance tickets. In an attempt to curtail the influx of noise complaints, Tempe agreed to allow Shady Park to sell advance tickets if it built a canopy around the venue to contain sound. Shady Park again halted concerts until completion of the canopy. Concerts resumed on September 10, 2021. Despite the canopy, Mirabella residents continued complaining about the noise to Mirabella management and Tempe, including police.

¶4        Mirabella residents complained that the concerts interrupted their sleep, work, study, television, and conversations. Some residents also complained about furniture and other home items shaking during the concerts. Residents claim they did not invite guests over on the weekends

during the concerts and some residents were forced to move to other units in the building or out of Mirabella completely. Every Mirabella resident on the building side facing Shady Park has complained to Mirabella's executive director. Nearby hotels also regularly received complaints related to Shady Park's noise.

¶5            In some instances, police responded to the scene to address the complaints. No police bodycam footage evidenced oppressive noise or shaking furniture. One responding officer commented that inside a purportedly affected residence it was "completely silent." Another officer detected no "unreasonable noise" on multiple response visits. And no residents offered contemporaneous recordings confirming their experience.

¶6            After many complaints, Mirabella and five individual residents sued Shady Park, alleging nuisance claims and violation of Tempe's noise ordinance.

¶7            Tempe's noise ordinance identifies 14 factors to consider in determining whether noise is "unnecessary, excessive or offensive." Tempe City Code § 20-11.  These factors include: volume and intensity of noise; whether noise is natural or unnatural noise, usual or unusual; time of day, duration, and proximity to sleeping facilities; and population density of the area. *Id.* Tempe intended the Mill Avenue district, where Shady Park and Mirabella are located, to be a high-density, mixed-use area not subject to residential zone noise expectations.

¶8            During a five-day evidentiary hearing, both sides called expert acoustics witnesses. Mirabella's expert, Michael Dickerson, testified that Shady Park's concerts violated most of the listed factors under Tempe's ordinance.  And he testified that Shady Park is responsible for the rise in decibel level at Mirabella on weekends. A DJ that performs at Shady Park testified that additional measures to mitigate the noise level are possible, such as adding more subwoofers and turning down the volume of the low frequency noise. While Shady Park intended to mitigate sound when it constructed the canopy, witness testimony indicated the canopy had "little-to-no" impact on mitigating Shady Park's noise.

¶9            Dickerson testified that using a measurement to set a noise limit would "establish a baseline," which can be used in the future to help Shady Park conduct concerts without disturbing area residents. During the hearing, the experts from opposing sides differed on the appropriate decibel measurement to use. Dickerson preferred to use a decibel reading with "C-weighting," while Shady Park's expert, Todd Beiler, preferred

using "A-weighting." A C-weighted decibel reading measures "equal loudness at all frequencies," while an A-weighting seeks to mimic what the human ear hears. Dickerson claimed lowering the volume to 95 decibels measured with C-weighting or 65 decibels measured with A-weighting would mitigate the noise. Beiler argued that an A-weighted measurement is more appropriate for the inquiry here because it more accurately shows the loudness humans will experience. Beiler suggested 97 decibels measured with A-weighting would be the low end for a music concert. The court agreed that A-weighting is more useful and followed this low end of the range when setting the injunction limit.

¶10 The superior court acknowledged that Shady Park is a music venue important to the local community in Tempe. But this did not negate the disruption Shady Park caused to the surrounding residential area. The court noted that without abating the nuisance Mirabella could suffer reputational damage. The court ultimately determined that an injunction was necessary because Mirabella demonstrated probable success on the merits, the possibility of irreparable injury, and that the balance of hardships favored Mirabella. The injunction: (1) limited concerts to 7 p.m. to 11 p.m. on Fridays and Saturdays, and 2 p.m. to 7 p.m. on Sundays; (2) limited the decibel level as measured from Shady Park's stage to 97 (using the A-weighting); (3) required Shady Park to acquire additional subwoofers; and (4) required Shady Park and all plaintiffs to reach an agreement allowing plaintiffs to monitor the sound level.

¶11 Shady Park appealed. We have jurisdiction. A.R.S. § 12-2101(A)(5)(b).

## DISCUSSION

¶12 Shady Park asks us to vacate the injunction because: "(1) it is overbroad and violates Shady Park's First Amendment rights; (2) violates principles of separation of powers and deference to other branches of government; (3) contains legally flawed and unworkable enforcement mechanisms; and (4) improperly seeks to remedy harms compensable by monetary damages."

¶13 A preliminary injunction is appropriate if plaintiffs show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable harm if the relief is not granted, (3) the balance of hardships favors the party seeking injunctive relief, and (4) the public policy favors granting the injunctive relief." *Fann v. State*, 251 Ariz. 425, 432 (2021) (citations omitted). Plaintiffs may show either "1) probable success on the merits and the

possibility of irreparable injury; or 2) the presence of serious questions that the balance of hardships tip sharply in favor of the moving party." *Id.* (cleaned up). "This is a sliding scale, not a strict balancing of factors." *Id.*

¶14 We review the grant of a preliminary injunction for abuse of discretion. *TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489, 492, ¶ 8 (App. 2013) (citation omitted). "An abuse of discretion exists if the superior court applied the incorrect substantive law or preliminary injunction standard, based its decision on an erroneous material finding of fact, or applied the appropriate preliminary injunction standard in a manner resulting in an abuse of discretion." *Id.* (citation omitted).

¶15 Shady Park argues that the preliminary injunction violates its First Amendment rights because music is a protected form of expression, and the curfew is an overly broad restriction. *See Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 567 (9th Cir. 1984) ("'[L]ive entertainment, such as musical and dramatic works, fall[s] within the First Amendment guarantee.'") (citation omitted). Unlike a First Amendment statutory challenge, we engage in a "more stringent application of general First Amendment principles" when applying the First Amendment to an injunction restricting speech. *Madsen v. Women's Health Ctr. Inc.*, 512 U.S. 753, 765 (1994). Thus, in addition to such general principles, we also seek "to ensure that the injunction was no broader than necessary to achieve its desired goals." *Id.* "Accordingly, when evaluating a content-neutral injunction, we think that our standard time, place, and manner analysis is not sufficiently rigorous. We must ask instead whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Id.*

¶16 The injunction here requires Shady Park to decrease the decibel level of its outdoor concerts, imposes additional measures to mitigate noise, and bans completely live music outside of certain hours. Shady Park argues the injunction is overly broad by imposing a curfew when Mirabella's complaint did not request time restrictions.

¶17 We do not question the significant government interest at issue: "the government has a substantial interest in protecting its citizens from unwelcome noise." *Ward v. Rock Against Racism*, 496 U.S. 781, 796 (1989) (cleaned up). The question we confront is whether the injunction burdens more speech than necessary in service of that significant interest.

¶18 Mirabella contends Shady Park waived its First Amendment argument by failing to raise the issue before the superior court's injunction

ruling. No party specifically pursued a time restriction. Mirabella asked the court to enjoin noise exceeding the Tempe noise ordinance threshold and above certain decibel measures. While the court briefly questioned a witness about a "cap on time," it later noted no pleadings included a request to shut down live music at Shady Park; indeed, the court specifically instructed the parties: "this case isn't about shutting down live music at Shady Park."

¶19 The injunction ruling was thus the first notice to Shady Park that it faced a complete ban on music events outside certain hours. Shady Park raised the First Amendment argument within two weeks of the ruling when it asked the court to stay the injunction. We do not find waiver. But even if waiver applies, we exercise our discretion to consider Shady Park's First Amendment arguments. *See Noriega v. Town of Miami*, 243 Ariz. 320, 326, ¶ 27 (App. 2017) (waiver is a discretionary doctrine).

¶20 The superior court's preliminary injunction burdens more speech than necessary to abate the alleged nuisance. The injunction forbade Shady Park from hosting concerts outside of certain times. But Mirabella's own expert testified that turning the volume down to 65 decibels A-weighted would help surrounding residents. And there is nothing in the record establishing that a complete ban on concerts during certain hours is necessary to resolve the nuisance.

¶21 It is not clear whether or to what extent the court's imposition of a curfew impacted the other provisions of the injunction. We therefore vacate the entire injunction so that the superior court can reconsider its order taking into account Shady Park's First Amendment argument. Because we vacate based on the First Amendment, we decline to analyze Shady Park's other arguments.

## CONCLUSION

¶22 The superior court's injunction burdens more speech than necessary to address the asserted harm. We vacate the injunction and remand the superior court to reconsider its ruling, accounting for the First Amendment challenge.