NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ARBORCRAFT LLC, *Plaintiff/Appellee*,

*v.*

ARIZONA URBAN ARBORIST, LLC, et al., *Defendants/Appellants.*

No. 1 CA-CV 23-0384
No. 1 CA-SA 23-0108
(Consolidated)

FILED 10-3-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2022-095580
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

---

COUNSEL

Jackson White PC, Mesa
By Nathaniel J. Hill, David C. Clukey
*Counsel for Plaintiff/Appellee*

Fischer & Phillips LLP, Phoenix
By Shayna Balch Santiago, Jacob R. Valdez
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Chief Judge David B. Gass delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Andrew M. Jacobs joined.

---

**G A S S**, Chief Judge:

¶1        Arizona Urban Arborist, LLC, Martin Griner, Brenda Griner, and Anthony Schmidt (collectively Urban) appeal the superior court's preliminary injunction order in favor of ArborCraft, LLC (ArborCraft). We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        ArborCraft is a tree-trimming company owned and operated by Clayton Sherwood and Max Rezende. Since opening in 2018, ArborCraft has invested about $370,000 in marketing and online services to grow its base of over 7,000 clients.

¶3        ArborCraft stores all client and potential client information in password-protected databases to which only Sherwood and Rezende have full access. Patricia Bravo, ArborCraft's office manager, also has full access to the database and requires permission from Sherwood or Rezende to perform any tasks beyond her assigned duties. Other ArborCraft employees and independent contractors have access to the databases only as necessary to complete their immediate job assignments.

¶4        ArborCraft engaged Bert Griner and Anthony Schmidt as independent contractors in October 2019 and August 2021 respectively. Neither Griner nor Schmidt signed a covenant not to compete or a non-disclosure agreement. Griner and Schmidt worked as estimators, interacting with clients, creating job quotes, and coordinating ArborCraft's tree-trimming crews.

¶5        In August 2022, Griner left ArborCraft to form Urban, and a month later, Schmidt joined Griner as a co-owner. Without permission from Sherwood or Rezende, Griner and Schmidt obtained a complete electronic copy of ArborCraft's client list. The superior court found Griner and Schmidt received the copy "likely . . . through Patricia Bravo."

**¶6**      In the following weeks, ArborCraft discovered a marketing email Urban had sent to clients identified on ArborCraft's client list. Suspecting Griner had illegitimately obtained the client list, Sherwood and Rezende recorded a phone call with him in September 2022. During that call, Griner denied having ArborCraft's client information and suggested the email was "spam." In December 2022, ArborCraft clients again received Urban's marketing emails.

**¶7**      ArborCraft sued Urban, raising various claims and seeking a preliminary injunction against Urban's use of ArborCraft's client list. After an evidentiary hearing, the superior court determined ArborCraft's client list was a trade secret and entered an injunction in ArborCraft's favor. The superior court then ordered ArborCraft to post a $5,000.00 bond, which it did.

**¶8**      The preliminary injunction prohibits Urban, its agents, and employees from using the ArborCraft client list. The injunction further prohibits Urban from contacting persons on the list without written documentation showing the contacted person was Griner's or Schmidt's client before October 2019. The injunction also requires Urban to return all copies of ArborCraft's client list it possesses. Urban unsuccessfully moved the superior court to clarify and reconsider the injunction order.

**¶9**      Urban then filed both a petition for special action (1 CA-SA 23-0108) and a direct appeal (1 CA-CV 23-0384) under A.R.S. § 12-2101.A.5.b. We consolidated both cases and have jurisdiction over Urban's timely appeal under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and -2101.A.5.b.

## ANALYSIS

**¶10**      This court reviews a grant of a preliminary injunction for an abuse of discretion. *TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489, 492 ¶ 8 (App. 2013). The superior court abuses its discretion if it: (1) "applie[s] the incorrect substantive law or preliminary injunction standard"; (2) base[s] its decision on an erroneous material finding of fact"; or (3) misapplies an appropriate preliminary injunction standard. *Id*.

I.   **Because this case involves ArborCraft's trade-secret claim, Urban misplaces its reliance on the law of noncompete agreements.**

**¶11**      Urban argues the preliminary injunction violates public policy because it places a "judicially imposed non-compete" on its business

and therefore this court should analyze the injunction as a restrictive covenant. But Urban's argument misses the mark.

¶12 True, noncompete agreements outline what former employees can and cannot do as it relates to the employer's business, including restricting use of the employer's clients and client information. *See, e.g.*, *Hilb, Rogal & Hamilton Co. of Ariz. v. McKinney*, 190 Ariz. 213, 216 (App. 1997) (noting a noncompete agreement protecting an employer's legitimate business interest is enforceable); *Bryceland v. Northey*, 160 Ariz. 213, 216–17 (App. 1989) (noting employers may protect their interest in customer relationships by using noncompete agreements); *Amex Distrib. Co., Inc. v. Mascari*, 150 Ariz. 510, 517–19 (App. 1986) (noting an agreement prohibiting terminated employee from doing business with former employer's customers for "some duration" under three years would have been justifiable). But noncompete agreements are not the exclusive mechanism for controlling the use of an employer's client information, such that the law governing noncompete agreements must control all means of doing so.

¶13 Put simply, noncompete agreements are not injunctions. Covenants not to compete are creatures of contract, primarily intended to "prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." *Valley Med. Specialists*, 194 Ariz. 363, 367 ¶ 12 (App. 2013) (quoting Harlan M. Blake, *Employee Agreements not to Compete*, 73 Harv. L. Rev. 363, 367 (1960)). An injunction against misuse of a trade secret, by contrast, is court-imposed, usually involuntarily, and aimed at undoing or preventing harm likely to result from misappropriation of a trade secret while a lawsuit is pending. *See* A.R.S. § 44-402.A (providing for injunctive relief when trade secrets are misappropriated); *see also* A.R.S. § 12-1801 (providing for injunctive relief generally); *TP Racing*, 232 Ariz. at 495 ¶ 21 (prerequisites for injunctive relief). Because noncompete covenants are not injunctions, we do not look to the law of covenants not to compete to determine the propriety of a preliminary injunction. For these reasons, we need not consider Urban's arguments about the scope of noncompete agreements. Instead, we consider the case, as the superior court did, as one involving a trade-secret claim under the Arizona Uniform Trade Secrets Act.

## II. The superior court did not abuse its discretion when it determined ArborCraft's client list was a trade secret.

**¶14** On appeal, Urban also argues the superior court erred when it found the ArborCraft client list was a trade secret for the purposes of a preliminary injunction. The analysis of whether something is a trade secret is a mixed question of law and fact. *Calisi v. Unified Fin. Servs., LLC*, 232 Ariz. 103, 106 ¶ 13 (App. 2013). This court "defers to the [superior] court's factual findings unless clearly erroneous[] but review[s] its legal conclusions *de novo*." *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 64 ¶ 5 (App. 2011).

**¶15** The Arizona Uniform Trade Secrets Act (AUTSA) governs the protection of trade secrets. A.R.S. § 44-401 through -407. Under the AUTSA, a trade secret is:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that both:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

A.R.S. § 44-401.4.

**¶16** This court uses several factors to decide whether a client list is a trade secret. *Calisi*, 232 Ariz. at 106 ¶ 15. A client list may receive trade-secret protection if a claimant "compiled the list by expending substantial efforts to identify and cultivate its customer base such that it would be difficult for a competitor to acquire or duplicate the same information." *Id.* at 107 ¶ 17. "A related factor is whether the information contained in the . . . list derives independent economic value from its secrecy[] and gives" the list's holder "a demonstrable competitive advantage over others in the industry." *Id.* at 107 ¶ 18. We also consider whether a business has divulged its client list only to employees or has shared it with outsiders. *See id.* at 108–09 ¶ 19.

**¶17** The record shows ArborCraft expended "substantial efforts" compiling its client list, spending five years and about $370,000 on marketing to develop its client list through advertising and online services.

Competitors, including Urban, could not easily replicate ArborCraft's list without similar investment.

¶18 The record also indicates ArborCraft kept its client list secure and secret. ArborCraft limited access to the list by keeping it in a password-protected database to which only ArborCraft's two owners and office manager had full access. And ArborCraft never granted its employees or contractors, aside from Patricia Bravo, complete access to the database.

¶19 Even so, Urban argues the client list lacks independent economic value because it only identifies publicly available contact information and lacks details such as client needs, preferences, and pricing. But Urban ignores the clear economic value derived from ArborCraft's years of investment in pursuing a competitive advantage in the marketplace. *See Calisi*, 232 Ariz. at 107 ¶ 18 (competitive advantage derived from list as factor to consider).

¶20 Next, Urban argues ArborCraft should have (1) spent "substantial efforts" updating its client list and removing stale information and (2) provided a written confidentiality agreement prohibiting the list's disclosure to third parties. Perhaps those measures would have been wise. But nothing in Arizona law makes them necessary for the client list to qualify as a trade secret. Urban cites no such law, and we find none. Instead, a trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." A.R.S. § 44-401.4(b). The resulting secrecy "need not be absolute." *Enter. Leasing Co. of Phoenix v. Ehmke*, 197 Ariz. 144, 150 ¶ 23 (App. 1999). ArborCraft's limited disclosure and password protection are reasonable precautions necessary to protect its client list and satisfy the AUTSA's requirements.

¶21 ArborCraft, thus, took reasonable steps to protect the client list, and Urban neither innocently discovered ArborCraft's trade secret nor in good faith paid value for it. *See id.* at 151 ¶ 26. The superior court did not abuse its discretion when it concluded the client list was a trade secret entitled to protection because the record supports its conclusion.

III. **The superior court did not abuse its discretion by granting ArborCraft's preliminary injunction.**

¶22 Urban argues ArborCraft did not establish grounds sufficient for a preliminary injunction. A preliminary injunction is appropriate if a party shows: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable harm if the relief is not granted, (3) the balance of hardships favors the party seeking injunctive relief, and (4) public policy

favors granting the injunctive relief." *Fann v. State*, 251 Ariz. 425, 432 ¶ 16 (2021). "Alternatively, the movant can seek to prove one of two conjunctive pairings: (1) probable success on the merits and the possibility of irreparable harm, or (2) the presence of serious questions and the balance of hardships tipping sharply in the movant's favor." *City of Flagstaff v. Ariz. Dep't of Admin.*, 526 P.3d 152, 157 ¶ 14 (App. 2023). Here, the superior court focused on the latter, alternative test, so we assess the preliminary injunction on that basis.

¶23 In examining the superior court's application of this test when it is deciding whether to grant a preliminary injunction, "[t]he relationship between probable success on the merits and the possibility of irreparable harm is inversely proportionate: 'The greater and less reparable the harm, the less the showing of a strong likelihood of success on the merits need be. Conversely, if the likelihood of success on the merits is weak, the showing of irreparable harm must be stronger.'" *Id.* at 157 ¶ 17 (quoting *Fann*, 251 Ariz. at 432 ¶ 16).

¶24 For injunctive relief to be appropriate under the AUTSA, Urban must have threatened to misappropriate or misappropriated a trade secret. A.R.S. § 44-402.A. Misappropriation occurs when someone discloses or uses a trade secret without the secret holder's consent or acquires a trade secret through improper means. A.R.S. § 44-401.2.

¶25 Urban obtained access to ArborCraft's client list without permission from either Sherwood or Rezende. Using the client list, Urban actively marketed its services to ArborCraft clients. And when ArborCraft confronted Urban about having the list without its permission, Urban denied possessing it and continued to market its services to clients on ArborCraft's list. Urban thus misappropriated the client list, making injunctive relief appropriate.

¶26 But Urban also contends the superior court erred in determining ArborCraft faced irreparable harm. It argues the court's irreparable harm findings were (1) conclusory, (2) unsupported by evidence, and (3) undermined by ArborCraft's delay in seeking relief. We address each argument in turn.

¶27 First, the superior court's finding was not conclusory. The superior court found the "economic loss due to unfair competition through use of the confidential business information and trade secrets of ArborCraft is not readily subject to a specific damages calculation and would also result in irreparable harm in the form of loss of future business." The superior

court's finding explains misappropriation of ArborCraft's customer list would inflict damage that would be difficult—if not impossible—to quantify and would also result in loss of future business. Both these grounds speak to the essence of irreparable damage because monetary damages may be inadequate for uncertain losses. *IB Prop. Holdings*, 228 Ariz. at 65 ¶ 10. The superior court thus provided specific grounds for its finding that ArborCraft could suffer irreparable harm.

¶28 True, a finding could set forth more information, recite more facts, and detail more reasons to buttress the conclusion. But "[a] trial court's legal conclusions, like its fact-findings, are subject to change after a full hearing and the opportunity for more mature deliberation." *City of Flagstaff*, 526 P.3d at 157 ¶ 13 (cleaned up). The superior court's finding is not conclusory because it discussed specific supporting grounds.

¶29 Second, substantial evidence in the record supports the superior court's irreparable injury finding. ArborCraft submitted testimony that its proprietary customer list constitutes its main source of revenue because it provided access to recurring customers and led to new customers and business. Other testimony showed ArborCraft's clients would lose trust in it and withdraw their business were the customer list compromised. Indeed, ArborCraft presented testimony that such loss had already occurred. Additionally, the superior court found Urban's witnesses not credible. Though Urban may disagree with the superior court's assessment, "we do not reweigh the evidence or reassess credibility issues on appeal." *Williams v. King*, 248 Ariz. 311, 317 ¶ 26 (App. 2020) (as amended).

¶30 Third, the superior court did not abuse its discretion by finding ArborCraft's request for relief timely because Urban delayed the proceedings. As the superior court observed, when Urban's owners were confronted in a September 2022 telephone call about ArborCraft's customer list—placed within days of learning of its possible compromise—they did not admit to their appropriation and use of it. "Rather, they chose to remain silent as to their possession of the list and mislead [ArborCraft] by giving the impression that they did not have the list." Because of Urban's denials, ArborCraft kept investigating until December 2022, when further mailings to its customers provided new evidence of Urban's involvement. ArborCraft sought injunctive relief within the same month it finally confirmed Urban possessed the list. The superior court, thus, did not err by finding ArborCraft did not unreasonably delay seeking injunctive relief.

¶31 Urban also argues the superior court improperly considered issues outside ArborCraft's trade-secret claim when it issued the

preliminary injunction. Urban cites the superior court's repeated references to "confidential business information" in its injunction order. We agree that confidential business information and trade secrets conceptually overlap, but they are not synonymous. *See Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 184 ¶ 20 (2014). And the superior court informed both parties it would be "lasered in" on the trade-secret claim and tailored its injunction to protect ArborCraft's trade secret. Urban has not identified where the superior court strayed, and our review shows it did not. We, thus, need not address Urban's argument about common-law misappropriation of confidential business information.

¶**32** ArborCraft met the relevant standards. For these reasons, the superior court did not abuse its discretion when it granted a preliminary injunction to protect ArborCraft's client list.

## IV. The superior court tailored its preliminary injunction appropriately.

¶**33** Urban argues the superior court abused its discretion because it imposed an overbroad preliminary injunction on its business. Urban also claims the injunction fails to meet the requirements of Rule 65(d)(1), Arizona Rules of Civil Procedure.

¶**34** Under Rule 65(d)(1), "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Ariz. R. Civ. P. 65(d)(1).

¶**35** Urban contends the term "contacting" in the preliminary injunction is too vague and implies no business contact of any kind. Yet the term "contacting" is common in colloquial speech and is unambiguous here. *See* A.R.S. § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language."). Urban's argument likewise ignores the superior court's detailed explanation of its order. The superior court expressly stated:

> There is no limitation on open and fair competition in the marketplace. Defendants are free to use their past relationships with past service providers, or others who also contracted with ArborCraft for services. They can also contact and continue relationships with those clients who they can demonstrate were prior clients of theirs before October 2019.

**¶36** The superior court, thus, tailored the injunction appropriately to prohibit Urban's use of ArborCraft's client list and did not limit Urban's ability to compete in the marketplace.

**¶37** Urban argues the injunction bond set by the superior court does not provide adequate security. The superior court may issue a preliminary injunction "only if the movant gives security in such amount as the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Ariz. R. Civ. P. 65(c)(1). The superior court has discretion over the amount of security required. *See United Food & Com. Workers Loc. 99 v. Brewer*, 817 F. Supp. 2d 1118, 1128 (D. Ariz. 2011) (interpreting substantively identical federal rule); Fed. R. Civ. P. 65(c) (substantively identical to Ariz. R. Civ. P. 65(c)(1)); *see also Flynn v. Campbell*, 243 Ariz. 76, 80 (2017) (instructive and persuasive value of federal court interpretations of federal procedural rules for interpretation of similar Arizona procedural rules and desirability of uniformity in interpretation). The superior court set a $5,000.00 bond. Though a court can abuse its discretion by setting an unreasonably low bond amount, appellants neither offered the superior court, nor now point to, any evidence supporting a greater amount.

**¶38** As a final matter, Urban appears to argue impossibility but cites no authority for its claim. Urban says it is not capable of "returning" all copies of the client list because the list does not exist in paper form. But the list exists in electronic form, and nowhere in the injunction does the superior court order Urban to return only paper copies. We, thus, find the order language neither vague nor overbroad.

**¶39** On this record, the superior court reasonably tailored the preliminary injunction.

## ATTORNEY FEES AND COSTS

**¶40** Urban and ArborCraft request attorney fees and costs under Ariz. R. Proc. Spec. Act. 4(g), A.R.S. §§ 12-341, 12-341.01, and 44-404. Because Urban is not the prevailing party, we decline its request. Though ArborCraft is the prevailing party, this case is at the preliminary injunction stage. We, thus, decline to award attorney fees to ArborCraft. On remand, the superior court may consider any request for attorney fees, including attorney fees incurred in this appeal, when this litigation concludes. *See Eans-Snoderly v. Snoderly*, 249 Ariz. 552, 559 ¶ 27 (App. 2020). We award ArborCraft its taxable costs on appeal as prevailing party on compliance with ARCAP 21.

## CONCLUSION

¶41        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA